### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### v.
### GENERAL DYNAMICS CORPORATION et al.
### Civ. A. No. CA 4–74–54.

United States District Court,
N. D. Texas,
Fort Worth Division.
Aug. 15, 1974.

**60**

Walter W. Garnsey, Jr., EEOC, Denver, Colo., for plaintiff.

J. Olcott Phillips, McDonald, Sanders, Ginsburg, Phillips, Maddox & Newkirk, Fort Worth, Tex., for General Dynamics Corp.

Sam Houston Clinton, Jr., Clinton & Richards, Austin, Tex., Gordon A. Gregory, Gregory, Van Lopik & Higle, Detroit, Mich., Michael D. Schattman, Schattman & Guthrie, Fort Worth, Tex.,

Otto B. Mullinax, Mullinax, Wells, Mauzy & Baab, Dallas, Tex., for defendants.

## MEMORANDUM ORDER

MAHON, District Judge.

This case is before the Court on defendant, General Dynamic's motion to dismiss. The principal contention is that the Equal Employment Opportunity Commission[1] is precluded from maintaining this action because it failed to timely bring suit.[2,3]

EEOC brought this suit pursuant to Title VII of the Civil Rights Act on February 25, 1974.[4]

EEOC is suing General Dynamics and the several unions which operate plant facilities at General Dynamics locations in Fort Worth and Waco, Texas. It alleges that charges were filed with the Commission more than thirty days prior to the institution of the suit, that the Commission had determined that reasonable cause existed to believe that defendants had engaged in unlawful employment practices, and that no conciliation agreement acceptable to it had been secured. It complains of systemic discrimination based upon race, sex and national origin vis a vis the employment opportunities of blacks, females, and Spanish-surnamed Americans. It alleges that such discrimination has occurred since July 1965 and has continued up to the present date. There is no dispute that more than one hundred eighty days has expired since the filing of the last charge with EEOC. Nor is there dispute that a right to sue notice was issued by the

---

1. Hereinafter, EEOC or Commission.

2. General Dynamics raises two additional issues: (1) that EEOC failed to engage in good faith negotiations prior to bringing suit and is therefore barred and (2) that EEOC is barred for failure to give sufficient notice of failure to conciliate or inability to obtain voluntary compliance. 29 C.F.R., §§ 1601.23 & 1601.25 (1973). The Court has not found it necessary to consider or decide such issues.

3. General Dynamics urges that it is advancing a jurisdictional prerequisite of maintaining suit and not a statute of limitations matter. The Court believes it unnecessary to decide the semantical difficulty, and will refer to the issue as one involving limitations.

4. On May 9, 1974, individual claimants filed a class action against the same defendants in this cause alleging sex discrimination. (CA 4–74–125). They allege their suit was brought within ninety days after the giving of notice of a right to sue from EEOC. Defendants in that action have pending a motion to strike or for summary judgment on the basis that intervention is dictated by Title VII. Plaintiffs in that cause have accordingly brought alternative motions to consolidate or to intervene in the instant suit.

commission to various aggrieved parties and that this suit was brought prior to that notice.[5] Section 706(f)(1) of the act is reproduced in its complete complexity in the margin.[6] General Dynamics strongly contends that this section establishes a jurisdictional time frame in which EEOC must bring suit. The Commission's position is that the statute is merely enabling in nature and does not establish any limitations period or jurisdictional prerequisite to its filing suit, other than the expiration of thirty days from the date of a charge being filed with them and a subsequent inability to secure from the named respondent a conciliation agreement. It asserts that the Equal Employment Opportunity Act of 1972, which gave the Commission the power to sue in its own right for the first time, should be understood as encompassing three distinct changes to the original legislation.[7] Initially, says EEOC, the first sentence should be perceived, apart from the remainder of 706 (f)(1), as empowering the Commission to sue, subject only to a charge being filed, thirty days elapsing and an inability to secure a conciliation agreement. Next, EEOC would direct attention to the enlargement of the time period for conciliation efforts to continue, without any individual claimants being empowered to sue, from thirty days to one hundred eighty days from the date of the charge being filed. The last change, EEOC advances, enlarges the period during which an individual claimant can sue, after he has received notice, from thirty to ninety days. It is within this context that EEOC interprets § 706(f)(1). In other words, the elapse of one hundred eighty days is to be seen as a condition precedent to any suit which an individual

---

5. 42 U.S.C. § 2000e–5 et seq.

6. "(f)(1) If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court. The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission or the Attorney General in a case involving a government, governmental agency, or political subdivision. If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or politi-

cal subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security. Upon timely application, the court may, in its discretion, permit the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, to intervene in such civil action upon certification that the case is of general public importance. Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsections (c) or (d) of this section or further efforts of the Commission to obtain voluntary compliance."

7. 42 U.S.C. § 2000e–5 (1964), established the Commission as a persuasive and conciliation agency, with no enforcement powers as such.

claimant might bring and not as affecting EEOC in any way.

General Dynamics' approach to 706(f)(1) is to consider it as a complete unit and view it as creating a new right, distinct and apart from any known at common law and therefore to be construed accordingly.[8]

These respective readings of 706(f)(1) oversimplify the limitations question. *See,* Guerra v. Manchester Terminal Corporation, 498 F.2d 641 (5th Cir. 1974); United States v. Georgia Power Co., 474 F.2d 906, 922–924 (5th Cir. 1973). The issue is not as EEOC suggests, a matter of finding in Title VII a boundless right to sue for the Commission because there is merely oblique language concerning the extent of its powers. The whispered commands of Congress must be followed just as certainly as those more clearly articulated.[9] Nor is following General Dynamics' position of applying the limitation period of one hundred eighty days,

which is the inception of the individual claimant's power to sue, as a strict foreclosure of the Commission's power to sue, a simple endeavor.[10] There is no quarrel with General Dynamics' position that where ". . . rights asserted in a court are statutory in nature, compliance with the statute is a prerequisite to the commencement of a civil action based thereon . . ." Miller v. International Paper Co., 408 F.2d 283, 286 (5th Cir. 1969). As observed in *Miller, supra,* however, this begs the question and leaves this Court with the task of determining the prerequisites found in that statute, even though courts have recognized that Title VII rights are novel and independent creations of Congress. Alexander v. Gardner-Denver Co., 415 U.S. 36, 49, 94 S.Ct. 1011, 1020, 39 L.Ed.2d 147, 159 (1974); Dent v. St. Louis-San Francisco Ry., 406 F.2d 399, 403 (5th Cir. 1969). The Fifth Circuit in addressing the issue of when a claimant's right to sue matured under the 1964 version of

---

8. This type argument has met with favor in interpretations of the more explicit language regarding the right to sue of individual claimants. Genovese v. Shell Oil Co., 488 F.2d 84 (5th Cir. 1973). A pure expression of this position is found in Simon v. United States, 244 F.2d 703, 705 (5th Cir. 1957) (quoting 34 Am.Jur. § 7, pp. 16–17):

"A Statute of limitations should be differentiated from conditions which are annexed to a right of action created by statute. A statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, is not a statute of limitations. It is a statute of creation, and the commencement of the action within the time it fixes is an indispensable condition of the liability and of the action which it permits. The time element is an inherent element of the right so created, and the limitation of the remedy is a limitation of the right. Such a provision will control, no matter in what form the action is brought. The statute is an offer of an action on condition that it be commenced within the specified time. If the offer is not accepted in the only way in which it can be accepted, by a commencement of the action within the specified time, the action and the right of action no longer exist, and the defendant is exempt from liability. * * * "

9. The Commission's argument in this regard is that Congress knew how to frame a clear cut limitations period, and in fact did so vis a vis the individual claimant. Therefore the omission of such language in this instance is evidence of Congressional intent that EEOC's right to sue is limitless. Such reasoning ignores the overall pattern found in 706(f)(1) as well as the developed jurisprudence encompassing the individual's right to sue. *See e. g.,* Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970) (an aggrieved party's claim to be construed broadly).

10. *See, e. g.,* EEOC v. Duff Bros., Inc., 364 F.Supp. 405 (E.D.Tenn.1973) no language in Act that could properly be interpreted as a limitation; contrary to legislative purposes of 1972 amendments); EEOC v. Mobil Oil Corp., 362 F.Supp. 786 (W.D.Mo.1973) (defendant's interpretation patently frivolous; no final time within which EEOC must sue); EEOC v. Bartenders Intern'l, 369 F.Supp. 827 (N.D.Cal.1973) (180 day period is only a period in which private party must wait; does not define period in which EEOC must sue); EEOC v. Eagle Iron Works, 367 F.Supp. 817 (S.D.Iowa 1973) (defendant's position requires a tortuous reading of the Act and ignores legislative history).

Title VII noted that confusion there stemmed from the inclusion in the pertinent section of ". . . both a time limitation on the conciliation efforts of the EEOC and a time limitation on the charging party's right to file suit." *Miller, supra,* 408 F.2d at 286. There is a similar confusion in the present version of the Act. Here, however, we deal not with the rights of an individual claimant, but rather the rights of the Commission. It is one matter to show solicitude for individuals, whose rights are paramount. With individual claimants in Title VII cases, courts do not deal with

". . . businessmen-plaintiffs or plaintiffs accustomed to consulting lawyers about their rights. This law is a remedial one, and the Congressional purpose would not be furthered by making plaintiffs of the kind with which we are concerned, members of the working class who are generally without substantial higher education, dot every 'i' and cross every 't' on their way to the courthouse." Antonopulos v. Aerojet-General Corp., 295 F.Supp. 1390, 1395 (E.D.Cal.1968).

Can this same reasoning apply to the Commission with equal vitality? I think not.

This Court is well aware that it does not write on a blank slate in facing this particularly obscure statute. There are numerous district court opinions on the matter reflecting a clear split of authority.[11] Because of this division, the

closeness of the question, and the well reasoned opinions on both sides of the issue, I have no doubt but that appellate review is imperative. This is really a matter for the Congress to decide. The lights of Congressional intent shine dim on this section. Support for either position may be found in the legislative history. *See e. g.,* EEOC v. Union Oil Co., *supra,* (arguments pro and con presented with excerpts from Congressional Record). Our American practice of inspecting legislative history for Congressional intent demonstrates its inherent limitations in such cases. Legislation by its very nature is a compromise of competing interest. *Compare,* the English experience where only the words of the Acts themselves may be considered. *Commissioner v. Acker,* 361 U.S. 87, 94, 80 S.Ct. 144, 4 L.Ed.2d 127, 132 (Justice Frankfurter, dissenting). I, too, agree that the problem here is a typical instance of statutory construction:

"The fact is that the difficulties of so-called interpretation arise when the legislature has had no meaning at all; when the question which is raised on the statute never occurred to it; when what the judges have to do is, not to determine what the legislature did mean on a point which was present to its mind, but to guess what it would have intended on a point not present to its mind, if the point had been present." Gray, The Nature and Sources of the Law, § 370 at 165 (1948) cited in Miller v. International Paper Co., 408 F.2d 283, 287 (5th Cir. 1969).

11. As of the date of the hearing, two district courts have sustained the limitations argument; five have sustained EEOC's position. Holding that a one hundred eighty day bar does exist are: EEOC v. Cleveland Mills Co., 364 F.Supp. 1235 (W.D.N.C.1973), rev'd 502 F.2d 153 (4th Cir. 1974); EEOC v. Griffin Wheel, 360 F.Supp. 424 (N.D.Ala.1974); EEOC v. Louisville & Nashville R.R., 368 F.Supp. 633 (N.D.Ala. 1974); EEOC v. Union Oil Co., 369 F.Supp. 579 (N.D.Ala.1974). Holding that there is no such bar are: EEOC v. Duff Brothers, Inc., 364 F.Supp. 405 (E.D.Tenn.1973); EEOC v. Mobil Oil Corp., 362 F.Supp. 786 (W.D.Mo.1973); EEOC v. Bartenders International Union, Local 41, 369 F.Supp. 827 (N.D.Cal.1973); EEOC v. Huttig Sash and Door Company, 371 F.Supp. 848 (S.D.Ala. 1974); EEOC v. E. I. DuPont de Nemours & Co., 373 F.Supp. 1321, 1330 (D.Del.1974) (I disagree that there are only scattered remarks supporting the limitations position. Senator Dominick's views are particularly germane if only because it was his amendment which substituted court enforcement procedures for the administrative cease and desist procedures and also contained the provisions for intervention powers.)

If there is no finality to the time when EEOC can bring suit against named respondents, the Court believes that the broad underlying policy of Title VII of encouraging adjustment and settlement of employment discrimination complaints outside of litigation would be frustrated. Enforcement through litigation is only one aspect of the Commission's responsibilities. EEOC is also, and perhaps primarily, an administrative body with a developing expertise in problems of employment discrimination. Conciliation by EEOC was originally intended to and still does, even after the 1972 Amendments, play an important role in the legislative scheme. Beverly v. Lone Star Lead Construction Corporation, 437 F.2d 1136, 1139 (5th Cir. 1971); Caldwell v. National Brewing Co., 443 F.2d 1044, 1046 (5th Cir. 1971), (citing with approval Young v. International Telephone & Telegraph Co., 438 F.2d 757 (3rd Cir. 1971), and recommending in another context, that the district court accord due regard to the conciliatory policy which is at the heart of Title VII). Under the present scheme envisioned by Title VII, I have no difficulty in holding the Commission to the same standards as courts have held individual complainants. I can find no indication that Congress intended to abandon the clear policy of deferring action in federal court until a charge has been filed with the Commission and an opportunity given the Commission to effect conciliation, if possible. Macklin v. Spector Freight Systems, Inc., 156 U.S.App.D.C. 69, 478 F.2d 979, 985–987 (1973). If Congress had chosen to accord the Commission unlimited rights of suit while giving to individual claimants only a limited right, then, I believe it would have done so explicitly. It is consistent with the Congressional scheme of deferring to the agency's conciliation efforts to have a jurisdictional time within which the Commission must sue, just as it is consistent for there to be such a time within which individual claimants must do so. That time for individual claimants is within ninety days after the Commission has given them notice of their right to sue. That time for EEOC is from after the thirtieth day a charge is filed until the expiration of one hundred eighty days.

This Court agrees that the most reliable sources of guidance in this matter are " . . . the language of the amendment itself, the section-by-section analysis of the amendment submitted by the Joint Conference Committee, and, finally, the well documented Congressional awareness of both the EEOC's experience under the original version of Title VII and of the capability which the EEOC could be expected to possess under the 1972 Amendments . . ." EEOC v. E. I. DuPont de Nemours & Co., 373 F.Supp. 1321, 1327 (D.Del.1974). Additionally, the Court looks to the broad Congressional purposes underlying Title VII: First, that the social disaster of racial and sex discrimination in employment opportunity be eliminated, and second, that prompt and effective methods be enacted to accomplish this goal. Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968). Based on these principles and guided by the above mentioned sources, this Court concludes that the Congressional scheme did envision a complete bar to a Commission suit after the lapse of one hundred eighty days. There is a jurisdictional prerequisite to an individual claimant's power to sue; likewise, it is contemplated that suits by the Commission should be timely. I conclude that limitations begin to run as to the Commission after the thirtieth day from the filing of the charge and that such period extends until the one hundred eightieth day. At that time the Commission's power to sue *eo nomine*, constricts. From that point forward, the Commission is limited to conciliation or intervention where appropriate.

As originally enacted, Title VII provided no powers to EEOC other than those of conciliation. The Commission's role was to seek voluntary compliance. It had no independent powers of enforce-

ment.[12]  Enforcement of Title VII was placed exclusively in the hands of individual claimants.[13]  The 1972 amendments, on their face, and as evidenced by the legislative history, reflects the consensus that private enforcement of Title VII as an exclusive approach, had proven inadequate and that a broadening of method was necessary to accomplish the worthy aims of the Act.  There was little disagreement on whether EEOC would be given enforcement powers.  The controversy was over the mode of such powers, i. e., whether EEOC would be given administrative cease and desist type authority or the judicial enforcement approach.  *See*, 1972 U.S.Code & Admin.News, pp. 2139–2141.  This is one instance of where the legislative history is valuable.  EEOC's analysis of the changes the 1972 Act effected is a helpful comparison of the original act and the amended 1972 version.  That is:

1.  The Commission was empowered to sue;

2.  The Commission's time for exclusive action was enlarged from thirty to one hundred eighty days.  Since the 1972 amendments, the Commission is the sole entity with power to conciliate, sue or dismiss the charges.  Prior to 1972 it could only conciliate or dismiss;

3.  The duration of the individual claimants right to sue is enlarged from thirty to ninety days; [14]

4.  Cross rights of intervention are allowed with the significant distinction that individual claimants are given this right absolutely while the EEOC is limited to permissive intervention.

The difficulty this Court finds with this approach alone, however, is its isolation of each change as opposed to viewing the section as an integrated whole.[15]  To examine each salutory change effected by the 1972 Act without regard to its effect on the other portions of Title VII and especially § 706(f)(1), is to be shortsighted.  As previously noted, the main theme underlying Title VII is that prompt methods be established to elimi-

12.  The Attorney General was permitted to file suit in so-called "pattern or practice" discrimination suits.  42 U.S.C. § 2000a–5 (1970).

13.  The Supreme Court's teaching has settled any questions as to the nature of civil rights actions.  ". . . when the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law.  A Title II suit is thus private in form only . . . [a plaintiff sues] . . . not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority . . ."  Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 401, 88 S.Ct. 964, 966, 19 L. Ed.2d 1263, 1265 (1968).  (footnotes omitted).

14.  This ninety day period has been properly found to be a jurisdictional prerequisite to maintaining suit and strict compliance is demanded.  Genovese v. Shell Oil Co., 488 F.2d 84 (5th Cir. 1973).

15.  The Court finds the language of § 706(f)(1) extremely awkward.  A reading of the pertinent parts alone is helpful to em-

phasize the point that the section is a unified whole.  *Compare*, the essential parts of § 706(f)(1) :
"(f)(1) If within thirty days after a charge is filed . . ., the Commission has been unable to secure from the respondent a conciliation agreement . . ., the Commission may bring a civil action against any respondent not a government . . . The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission . . . [I]f within one hundred and eighty [sic] days from the filing of such charge . . ., the Commission has not filed a civil action under this section, . . ., or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . Upon timely application, the Court may, in its discretion, permit the Commission, . . . to intervene in such civil action upon certification that the case is of general public importance . . .", with the provision as a whole, footnote 5, *supra*.

nate racial and sex discrimination in employment opportunity. I find that to accept EEOC's position on this issue would be to disregard this oft stated purpose of the Act, and to ignore the strong tradition of individual enforcement of Title VII which has developed. While the 1972 Amendment to Title VII did vest EEOC with its own independent power to sue, " . . . the private right of action remains an essential means of obtaining judicial enforcement of Title VII." Alexander v. Gardner-Denver Co., 415 U.S. 36, 45, 94 S.Ct. 1011, 1018, 39 L.Ed.2d 147, 156 (1974); Jenkins v. United Gas Corp., 400 F.2d 28, 32 (5th Cir. 1968). In this context then, why would EEOC be given an unlimited time in which to decide whether to conciliate further, sue, or dismiss a complaint, when the rights of the individual are paramount? This Court believes that prompt action on individual complaints is an essential part of the Title VII scheme. EEOC argues that a one hundred eighty day period is just too short. Not enough time they say, to properly investigate claims, especially where a respondent feigns cooperation in a ploy to allow limitations to run. If this occasion arises, EEOC could always timely file their suit while continuing the conciliation process. Settlements between litigants are the rule and not the exception. No purpose is served by allowing stale damoclean claims to persist.[16] If there is an on-going prac-

tice of prohibited discrimination new charges will present themselves either by individual claimants or by the Commissioner.[17]

In the instant suit, EEOC is relying in part on charges of discrimination nearly seven years old. A good many of the charges were filed over three years ago. The latest charge was filed in February 1973.[18] In such a situation, there is simply no need for the Commission to predicate their suit on stale charges. There is no purpose served by such a practice. Where an on-going practice of discrimination exists the Commission certainly can determine "reasonable cause" of any such violations and institute their own charges.

The 1972 Amendments provided for additional and cumulative remedies for the scourge of employment discrimination. One such new remedy was the independent right of the Commission to sue. But this right was not created in a vacuum. It was explicitly established in 706(f)(1); the enforcement provision which previously had empowered only individuals to sue. Contained in that section is a carefully measured sequence in which particular actions are invoked. It is in this considered measuring out of powers that the Court finds one more support for its conclusion that there is a specified duration to the Commission's right to sue.[19] That duration is from after the thirtieth day from the filing

16. The Commission's argument that a limitations period would frustrate conciliation is not persuasive. Knowledge that there is a definite time in which to conciliate or be subject to a Commission suit may be in itself an incentive to conciliate.

17. 42 U.S.C. § 2000e-5(a). The original act permitted charges to be filed by "a person claiming to be aggrieved" or by a member of the Commission where there was reasonable cause that a violation had occurred. 42 U. S.C. § 2000e-5(a) (1970). The 1972 Amendments allow charges to be filed on behalf of a person claiming to be aggrieved. See Sape and Hart, Title VII Reconsidered: The Equal Opportunity Act of 1972, 40 Geo.Wash.L.Rev. 824, 864 (1972).

18. Plaintiff's answers to interrogatories filed May 13, 1974.

19. Cf. Alexander v. Gardner-Denver Co., 415 U.S. 36, 46, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 146, 157 (1974). The Supreme Court, in discussing the plenary powers with which the federal courts are vested to enforce Title VII, says: " . . . it [Title VII] specifies with precision the jurisdictional prerequisites that an individual must satisfy before he is entitled to institute a lawsuit . . . ." These jurisdictional prerequisites are (1) filing timely charges of employment discrimination with the Commission and (2) by receiving and acting upon the Commission's statutory notice of the right to sue. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668, 675-676 (1973).

of a charge to the expiration of one hundred eighty days from such filing. It is plain that the initial thirty days from the date a complaint is filed is intended for conciliation only. The next one hundred fifty days is also for conciliation but here the Commission has enforcement powers: power to bring suit. During this time EEOC is the exclusive vehicle through which Congress intended Title VII to function. EEOC is not restrained in any way in the conciliation process or in its ability to sue. The individual claimant must wait while EEOC proceeds during this time. It is only after one hundred eighty days from the time the charge was filed, i. e., six months, that an individual claimant's right to sue may mature. It is significant that it is not the mere lapse of time which is the wellspring of an aggrieved party's right to sue, but rather the giving of notice by the Commission. Miller v. International Paper Co., 408 F.2d 283, 287 (5th Cir. 1969); Cunningham v. Litton Industries, 413 F.2d 887, 890 (9th Cir. 1969). 29 C.F.R. § 1601.25b provides that the statutory notice will not issue from the Commission even after the expiration of one hundred eighty days unless a "reasonable cause" determination has been made *or* unless a written demand is made by the aggrieved party or a member of the class aggrieved. The Commission correctly notes in this regulation that notice does not terminate the Commission's jurisdiction of the proceedings at issue and that processing shall continue. This regulation is in tune with the conciliatory policy which is at the heart of Title VII. Before such notice is given, the individual awaits Commission action: conciliate or dismiss the charge. For five months Commission action could include a lawsuit. In all cases the individual must wait six months from the date he files his charge before he may even make demand for his notice. In this case, individuals waited from approximately one to nearly seven years before notice issued from EEOC. The Commission always

holds the key to the courthouse. If the Commission does believe that a lawsuit is appropriate then certainly that determination can be made within six months after a charge is filed. If one is not brought by the Commission, then its power constricts to that of conciliation bolstered however by its ability to always empower individual claimants to sue. It is significant that the nature of such individual suits is nearly always one appropriate for class relief. Jenkins v. United Gas Corporation, 400 F.2d 28 (5th Cir. 1968). 29 C.F.R. § 1601.25b provides ample protection to the Commission's interest in conciliation. If its efforts have been unavailing, and individual claimants have made written demand for their notice, then it is not unreasonable to assume that individual suits are imminent. In such an event, it is clear that the Commission's powers enlarge once again by their own action in giving individual claimants notice of their right to sue. This enlarged power is the right of permissive intervention upon certification that the case is one of general public importance. In all cases, however, the Commission will have full notice of the fact that its power will constrict and can act accordingly if it so chooses. There is no frustration of the Congressional purpose in giving EEOC powers to sue as the Commission argues. Interpreting Section 706(f)(1) and 29 C.F.R. § 1601.25b to delineate a definite time frame for EEOC would tend to expedite rather than frustrate Congressional policy. If the Commission chooses to sue before the one hundred eighty days expires, then the individual may yet get to the courthouse through his absolute right of intervention. This is consistent with Congressional policy. After this time expires and once notice is given to an individual claimant, however, either on the Commission's own initiative or upon written demand, then I conclude, it is such a claimant alone who takes on the mantel of the sovereign to vindicate a policy of highest priority.[20] Newman

---

20. This position is not unfamiliar to the Commission. Apparently it was urged at one time by EEOC itself. " . . . *The Commission admits that it has no power to*

v. Piggie Part Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); Jenkins v. United Gas Corp., 400 F.2d 28, 32–33 (5th Cir. 1968). The Commission's power is not extinguished but rather enlarged at that time. It may still proceed at conciliation or it may now seek to intervene in any suit which is brought by an individual claimant. In the instant litigation the most recent charge was pending for nearly a year prior to suit. Most of the charges as previously noted were pending, not six months but more nearly twenty-four months or longer.

The Court is mindful that in the civil rights area broad, cumulative and overlapping remedies are common.[21] I do not feel, however, that the instant holding is in any way, inconsistent with this objective. In fact, it advances it. Congress recognized that in instances where litigation is necessary, duplicitous lawsuits are anathema. Equal Employment Opportunity Commission v. Missouri Pacific R.R., 493 F.2d 71, 74 (8th Cir. 1974); Crump v. Wagner Electric Co., 369 F. Supp. 637 (E.D.Mo.1973); 1972 U.S. Code Cong. & Admin.News at p. 2148. This is the purpose of allowing cross rights on intervention. This Court must give maximum effect to the full text of Title VII, and to permit EEOC to have unlimited time within which to sue, would be to frustrate the purpose of protecting individual claimants. The developed law in this area is replete with instances where courts have refused to penalize individual claimants in employment discrimination cases for the acts of the Commission. Veazie v. Southern Greyhound Lines, 374 F.Supp. 811, 814 (E.D. La.1974) (citing authorities). Allowing the Commission to sue during the time when the individual claimant is so empowered, would force him into a race to the courthouse with EEOC, lest he be relegated to intervention and involvement in protracted and more complex litigation. Equal Employment Opportunity Commission v. E. I. Dupont de Nemours & Co., 373 F.Supp. 1321, N. 15 (D.Del. 1974).[22, 23] It is beyond dispute that an individual claimant in Title VII cases is not to suffer because of delays caused by EEOC.

Accordingly, because the Commission has not brought their suit within one hundred eighty days from the date when any claim which is the basis of this lawsuit was filed, I conclude that it was not timely brought and must be and is dismissed.

It is so ordered.

institute an action during the ninety day period in which the aggrieved party has the exclusive right to sue. However, it contends that the power to institute action reverts to the Commission after the expiration of the ninety day period if the aggrieved has not filed suit. This Court does not interpret the statute as granting such power." EEOC v. Cleveland Mills Co., 364 F.Supp. 1235, 1238 (W.D.N.C.1973) rev'd 502 F.2d 153 (4th Cir. 1974). (emphasis supplied); Cf. EEOC v. Missouri Pac. R.R., 493 F.2d 71 (8th Cir. 1974).

21. See Alexander v. Gardner-Denver Co., 415 U.S. 3647, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147, 158 (1974) (holding that prior processing of claims under collective bargaining agreement not a bar to a Title VII action and observing that under Title VII "several forums" are provided for consideration of employment discrimination claims.

22. EEOC's argument that the policy of the public interest in seeing employment discrimination eliminated is best served by Commission lawsuits, neglects the fact that Title VII suits are by their very nature class actions and that this public policy has been consistently served in this manner. Jenkins v. United Gas Corp., 400 F.2d 28, 32–33 (5th Cir. 1968); Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 498–499 (5th Cir. 1968).

23. Other approaches to the problem of duplicitous lawsuits have been considered by other courts. See e. g., EEOC v. Huntig Sash & Door Co., 371 F.Supp. 848 (S.D.Ala. 1974); Crump v. Wagner Elec. Co., 369 F. Supp. 637 (E.D.Mo.1974); EEOC v. Cronin, 370 F.Supp. 579 (E.D.Mo.1973). In EEOC v. Missouri Pac. R.R., 493 F.2d 71 (8th Cir. 1974), the Court held that powers of suit reside in both EEOC and individual claimants after the giving of notice, and that the power of either diminishes the rights of intervention once suit has been filed by the other. I find this view unpersuasive because it leaves unresolved the question of whether the Commission's right to sue ever terminates.