**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**HUTTIG SASH & DOOR COMPANY, Defendant.**

Civ. A. No. 7900–73–H.

United States District Court, S. D. Alabama, S. D.

Jan. 24, 1974.

Roger J. Martinson, Acting Regional Atty., Ellis L. Bert, and Lawrence J. Kamenstzky, Atlanta, Ga., for Equal Employment Opportunity Commission.

Stova F. McFadden, Mobile, Ala., Asa R. Ambrister, Nashville, Tenn., for defendant.

### ORDER

HAND, District Judge.

This cause is before the Court on Motion to Dismiss filed November 27, 1973 by defendant, Huttig Sash & Door Company, raising the following issues:

1. Whether the Commission has standing to maintain this lawsuit separate and apart from that of charging party in a prior suit.

2. Whether the Commission can be estopped from bringing this complaint because of the prior dismissal of a private lawsuit.

3. Whether the proper action for the Commission was to intervene in the prior lawsuit and absent that, the Commission is now barred by statute from maintaining a suit in its own name.

4. Whether the Commission is bound by a statute time limitation of one hundred and eighty (180) days.

## STATEMENT OF THE CASE

The factual situation in this case is somewhat unique and a detailed recital of the facts is required.

On January 14, 1969, Calvin Rencher initiated a charge with the Commission alleging that his rights under Title VII had been violated.

On February 3, 1972, the Commission issued a decision finding that the respondent, Huttig Sash & Door Company, had not been in violation of Title VII when it failed to employ Rencher, but that the company did in fact maintain classifications segregated on the basis of race, and further, that its policies regarding the hiring and assignment of females were also in violation of Title VII. A copy of the Commission's decision is attached in Appendix, as exhibit A.

On March 26, 1973, the Commission notified the parties that conciliation efforts had failed and the Right-to-Sue Letter, as required by the statute, was issued to Mr. Rencher.

On May 9, 1973, Mr. Rencher presented his Right-to-Sue Letter and Notice of Failure of Conciliation to the Court and a docket number was assigned, namely 7655–73–H, to the Notice of Failure of Conciliation.

On May 14, 1973, the Court requested that Mr. Rencher contact Mr. J. D. Smith in order to provide additional information.

On May 29, 1973, plaintiff completed an Application to Proceed Without Prepayment of Costs; Affidavit in Support Thereof; and Order.

On June 1, 1973, the Court appointed counsel for the plaintiff, Calvin Rencher.

On October 1, 1973, plaintiff moved the Court for dismissal and on October 3, 1973 an Order was entered dismissing with prejudice.

On March 4, 1972 by Public Law 92–261, Title 42, United States Code, Section 2000e–5 was amended and thereafter the Equal Employment Opportunity Commission, hereinafter referred to as EEOC, was clothed with the authority to bring civil actions in their own name, a right not available to this agency prior to this time. When the final bill emerged from the joint House-Senate Conference, it was clear that the Commission's new powers reached just such cases as these where the charges were filed before the effective date of the Amendments, but were still pending before the Commission and cases filed thereafter. 1972 United States Code Congressional and Administrative News, p. 135, Title 42, United States Code, Section 2000e–5(f)(1) which grants the EEOC authority to bring suit reads as follows:

"(f)(1) If within thirty days after a charge is filed with the Commission . . ., the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge . . . . The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission . . . If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge . . . the Commission has not filed a civil action under this section . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any

person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security. Upon timely application, the court may, in its discretion, permit the Commission, . . . to intervene in such civil action upon certification that .the case is of general public importance. . . ."

■ Defendant's, Huttig Sash & Door Company, position in this case is that (a) the EEOC is required to bring suit within 180 days of the charge; (b) res judicata; (c) collateral estoppel and (d) there must be an outstanding charge at the time EEOC files its civil action. Neither (b) nor (c) above is applicable in the case at hand as the EEOC was not a party to nor had notice of the aggrieved party discrimination suit.

Plaintiff's, EEOC, position as argued in Court and supplemented by legal brief is that the only requirement as a condition precedent to its bringing suit is that there first be a charge filed, and this is so even though a previously filed charge has been litigated and dismissed. Once filed, there is no statute of limitations placed on EEOC (from here to eternity). EEOC further contends that notwithstanding the outcome of the charge and the litigation, EEOC can still bring a discrimination action whenever it desires without being limited to a time period.

This position is untenable as this Court certainly knows that nearly all Title VII suits are class actions, resulting in extensive discovery, numerous courtroom hearings and countless hours of research and legal writings. Thus, the EEOC feels it is not required to do anything until the class action decision is rendered, and then file an independent action if they disagree with the decision, even though said decision is acceptable to the parties litigant.

■ On the other hand, defendant's position that EEOC must bring said action within the 180 day period after filing of the complaint or *must* intervene in the civil action filed by the aggrieved party is also not acceptable. The purpose of the 180 day period is to define the time a private party must defer to the Commission's attempts to settle the dispute through conciliation, just as the Commission itself must delay thirty days from the date of the charge before it commences suit. To require the EEOC to intervene in every aggrieved party civil action or be bound by all issues or parties is also not acceptable. This would mean that the EEOC would be a necessary party in all Title VII litigation, which is contrary to the intent of Congress.

■ The correct interpretation of Title 42, United States Code, Section 2000e–5(f)(1) as it relates to nongovernmental agencies and the filing of discrimination suits is no suit can be filed within the first thirty days after the filing of a charge with EEOC. After the thirty day period has elapsed and up to and including the 180th day after the filing of the charge, only the EEOC can bring suit, but the aggrieved party may intervene in the civil suit. When the 180 day period has elapsed the aggrieved party has 90 days after receiving notice from EEOC in which to bring his civil action. The EEOC may intervene in the civil suit. Failure to intervene will bind the EEOC only insofar as it relates to the parties litigant and the issues existing between them. EEOC may bring an independent action, but only when there is an outstanding charge at said time the civil action is filed. Thus, if there has been only one charge filed with the EEOC and this charge has been adjudicated by the Court or disposed of prior to the EEOC bringing suit, the EEOC has no standing to file a civil action; therefore, since there was no outstanding charge pending at the time this action was filed, it is ordered, adjudged and decreed that this cause is dismissed. Costs taxed to the plaintiff.

## APPENDIX

### Case No. YBIO–077

| | |
|---|---|
| Date of alleged violation: | January 16, 1969 and continuing |
| Dates of filing of charges: | March 7, 1969 (January 16, 1969 violation) August 4, 1969 (continuing violations) |
| Dates of service of charges: | August 5, 1969 (Respondent Employer) August 6, 1969 (Respondent Labor Organization |

## DECISION

### SUMMARY OF CHARGE

Charging Party alleges that Respondent Employer is engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964 by failing to hire him because of his race (Negro) and by maintaining job classifications and facilities segregated by race.

Charging Party also alleges that Respondent Labor Organization is engaged in an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964 by failing fairly to represent him and other Negroes because of their race.

### JURISDICTION

Respondent Employer is engaged in the manufacture of building materials for sale and distribution in interstate commerce. It employs more than 25 persons at its Mobile, Alabama facility.

Respondent Labor Organization is a labor organization within the meaning of Section 701(d) and (e) of Title VII.

It represented the production and maintenance employees of McPhillips Manufacturing Company which employed Charging Party. McPhillips sold part of its inventory to Huttig. Huttig did not employ Charging Party, nor did it recognize the Union as the collective bargaining agent for its employees. The Union filed a charge with the N.L.R.B. alleging refusal to bargain (National Labor Relations Act, Sec. 8(a)(5)). The charge was withdrawn at the suggestion of the Board's Regional Director. It is apparent that the parties determined that no question concerning representation existed, that is, the Union had no status as the bargaining agent for Huttig's employees. Accordingly, the charge alleging failure to represent Charging Party in his dealings (application for employment) with Huttig is dismissed.

### SUMMARY OF INVESTIGATION

As mentioned above, Charging Party was employed by McPhillips. At the time Huttig purchased McPhillips' inventory, Charging Party avers that all employees were advised that the Company would employ them. Charging Party was not hired. Charging Party alleges that Respondent's failure to hire him was because of his race. Charg-

ing Party also alleges that the Respondent maintains racially segregated job classifications and facilities. Respondent denies the charges.

The evidence of record reveals that the employees of McPhillips were advised that they would be recommended to Respondent for employment. Seven Negro employees who applied to Respondent for employment were interviewed. All were hired except Charging Party. There is no evidence indicating that Respondent Employer's failure to hire Charging Party was because of his race, as alleged.

With respect to Charging Party's allegation that Respondent maintains eating, dressing, and toilet facilities segregated by race, observations of the Commission's representative disclosed that Respondent's facilities are used by all employees. Accordingly, we conclude Charging Party's allegation is without merit.

With respect to Charging Party's allegation that Respondent maintains job classifications segregated by race, Respondent's personnel records show that during June, July, and August 1969, Respondent hired five persons into its shop section. All are Caucasians. Respondent's records also show that all of its administrative and sales positions are occupied by Caucasians. Respondent's truck driver and warehouse positions are occupied by Negroes.

Title VII permits the use of evidence of statistical probability to infer the existence of a pattern or practice of discrimination. Bing v. Roadway Express, Inc., 444 F.2d 687 (5th Cir. 1971); United States v. Sheet Metal Workers, Local 36, 416 F.2d 123 (8th Cir. 1969). In the absence of credible evidence to explain the circumstances described above, we infer that Respondent Employer is maintaining job classifications segregated by race.

Investigation also revealed that Respondent employs no females in production jobs.[1] Respondent's records reveal that its newspaper advertisements soliciting applicants for production jobs have appeared under the heading of "help wanted men."

It is a violation of Title VII for an employer to place a help-wanted advertisement indicating a preference, limitation, or specification for a particular job based on sex, unless sex is a bona fide occupational qualification for the particular job within the meaning of Section 703(e). Commission Guidelines on Discrimination Because of Sex, 29 CFR 1604.4 (1969); Commission Decision No. 71–2048, May 12, 1971, Employment Practices Guide (CCH) 6244.

There is no evidence of record indicating that Respondent's expressed preference was based upon business necessity or a bona fide occupational qualification within the meaning of Section 703(e) of the Act. Accordingly, we conclude that Respondent is engaged in an unlawful employment practice in violation of Section 704(b) of Title

1. Sex is also an impermissible and unlawful criterion for employment, and it is the Commission's position that Charging Party's lack of expertise in pleading does not prevent the Commission from considering those unlawful employment practices which are like or related to the charge filed. Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970); King v. Georgia Power Co., 295 F. Supp. 943 (N.D.Ga.1968).

854

VII. We also conclude that Respondent discriminates against females as a class with respect to hiring for production positions.

DECISION

There is reasonable cause to believe that Respondent Employer is engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964 by maintaining job classifications segregated by sex and race, and by placing advertisements indicating a preference based upon sex.

There is not reasonable cause to believe that Respondent Employer is engaged in an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964 by refusing to hire Charging Party because of his race, and by maintaining facilities segregated by race, as alleged.

For the Commission:

(s) Eduardo Pena Jr.
Director of Compliance

FEB 3 1972
Date