**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant,**

v.

**CLEVELAND MILLS COMPANY,
Appellee.**

No. 73–2298.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 8, 1974.

Decided Aug. 19, 1974.

A. Carey, Gen. Counsel, Joseph T. Eddins, Acting Associate Gen. Counsel, Beatrice Rosenberg, Charles L. Reischel, Attys., Equal Employment Opportunity Commission, on brief), for appellant (Milton Smith, Gen. Counsel, Richard Berman, Labor Relations Counsel, Chamber of Commerce of the United States of America, Francis V. Lowden, Jr., Richmond, Va., Anthony J. Obadal, Washington, D. C., Hunton, Williams, Gay & Gibson, Richmond, Va., on brief for Chamber of Commerce of the United States of America, as amicus curiae).

Whiteford S. Blakeney, Charlotte, N. C. (Blakeney, Alexander & Machen, Charlotte, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and RUSSELL and FIELD, Circuit Judges.

HAYNSWORTH, Chief Judge:

In the District Court, summary judgment was entered for the defendant upon the ground that this action by the Equal Employment Opportunity Commission to remedy allegedly discriminatory employment practices could not be maintained because of time limitations. It construed the Equal Employment Opportunity Act of 1972,[1] amending Title VII of the Civil Rights Act of 1964,[2] which for the first time gave the Commission the right to institute judicial enforcement proceedings, as limiting the newly created right to proceedings commenced within a period of 150 days following the expiration of a period of 30 days after the filing of the adminstrative charge.[3] We reverse, for we do not find the Commission's right to seek judicial enforcement so circumscribed.

I

These proceedings were begun administratively on August 2, 1968 when one of its members filed with the Commission a charge of racial discrimination against Cleveland Mills. The proceedings did not move with rapidity. Cleve-

Beth L. Don, Atty., Equal Employment Opportunity Commission (William

1. P.L. 92–261, 86 Stat. 103 (1972).

2. 42 U.S.C.A. §§ 2000e et seq.

3. EEOC v. Cleveland Mills Co., W.D.N.C., 364 F.Supp. 1235.

land was not notified of the filing of the charge until November 28, 1968, and the first conciliation conference was held only on July 15, 1970. On August 17, 1971, more than three years after the filing of the charge, the Commission made a finding of probable cause to believe the charge of past and continuing discrimination by Cleveland. Still, conciliation attempts were continued until November 28, 1972, when the Commission notified the "aggrieved parties" of their right under 42 U.S.C.A. § 2000e–5(f)(1) to commence a private action within 90 days. No such action having been commenced within the allowable time, the Commission commenced this action on March 2, 1973, over four and one-half years after the filing of the charge.

## II

During most of the pendency of the administrative proceedings, the Commission had no enforcement powers. After an investigation and a determination of probable cause to believe the respondent was in violation of Title VII of the Civil Rights Act of 1964, the Commission was authorized only to seek voluntary compliance. Its roles were those of the conferee, conciliator and uncoercive persuader. If those processes failed, the Commission was required to notify the aggrieved parties, who, within 30 days after such notice, could file an action for the enforcement of their rights. There was no provision for judicial enforcement except such a private action in the name and at the instance of an aggrieved party filed within the 30-day period.

The enforcement scheme was substantially altered in March 1972 when the administrative proceedings in this case had been pending for more than three and one-half years. The Equal Employment Opportunity Act of 1972 amended 42 U.S.C.A. § 2000e–5(f)(1) to read in pertinent part:

If within thirty days after a charge is filed with the Commission * * *, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. * * * The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission * * *. If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge * * * the Commission has not filed a civil action under this section * * * or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission * * * shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. * * * Upon timely application, the court may, in its discretion, permit the Commission * * * to intervene in such civil action upon certification that the case is of general public importance. * * *

The text of the section contains no expressed or clearly implied time limitation upon the Commission's right to file a civil action once it has accrued. The first part of the section confers the right of action upon the Commission subject to conditions only, that at least 30 days shall have elapsed from the filing of the charge and that the Commission shall have failed to obtain a conciliation agreement acceptable to it. The latter part of the section confers a private right of action upon the aggrieved person, and that private right of action is closely confined within defined time periods. The private right of action

may not be exercised until after the lapse of 180 days from the filing of the charge and the aggrieved person has received notice from the Commission that (1) the charge has been dismissed by the Commission, or (2) that the Commission has not filed a civil action, and (3) that the Commission has not entered into a conciliation agreement to which the aggrieved person is a party. Once the time within which a private action may be filed commences to run, it survives for a period of 90 days, after which it is forever extinguished. This confinement of the private right of action is consistent with the earlier provisions of Title VII of the Civil Rights Act of 1964, in which an aggrieved person had only a 30-day period following the "suit letter" in which to commence a proceeding in court. The newly created right of the Commission to seek judicial enforcement had no such prior history, and the presence of strictures upon the individual's private right of action does not necessarily import a congressional intention to impose strict time limitations of a comparable nature on the Commission. The 180-day period serves its apparent purpose when it limits the time before which a private action may not be filed and thus avoids potential interference with the Commission in the performance of its primary duties of conciliation and enforcement. One would suppose that if the Congress had intended to cut off the Commission's right of action, it would have included clear language to that effect, just as it did when it clearly expressed its intention to cut off the individual's private right of action.

### III

A literal reading of the statute is consistent with its legislative history.

When Congress was considering the Equal Employment Opportunity Act of 1972, it is clear that it was of the opinion that the voluntary system of enforcement, supplemented only by the strictly confined private right of action, had proven inadequate to achieve the objectives of Title VII.[4] There was general agreement upon the need of legislation conferring enforcement powers upon the Commission, and the large area of debate was over the question of whether the Commission should be given the power to enter enforceable orders or whether it should be authorized to maintain actions in the district courts.[5] By whatever means, however, the congressional contemplation was that there should be primary reliance upon the powers of enforcement to be conferred upon the Commission, and not upon private lawsuits, to achieve equal employment opportunity.[6]

Congress was well aware of the fact that it was taking the Commission from eighteen to twenty-four months to administratively process a majority of the complaints.[7] It knew of the Commission's accumulated backlog of cases and of the likelihood that the number of filings would continue on the increase.[8] Nor was there any likelihood that the grant of enforcement powers to the Commission would accelerate its performance in seeking the disposition of complaints in the administrative process by voluntary compliance.

These conditions make it highly unlikely that the Congress would have considered the imposition of narrow and precise time limits upon the Commission's right to file an action for judicial enforcement. If it had intended to impose a 180-day cut off on the Commission's right of action, and administra-

4. 1972 U.S.Code Cong. & Admin.News pp. 2137, 2139–2141.

5. Id. at 2167–2176.

6. *See* the Conference Committee Section-by-Section Analysis of the Equal Employment Opportunity Act of 1972, 118 Cong.Rec.S. 3462 (March 6, 1972).

7. *See,* House Report No. 92–238, 92d Cong., 1st Sess. 3–5, 12 (1971) ; and Senate Report No. 92–415, 92d Cong. 1st Sess. 5–6, 87 (1971).

8. 1972 U.S.Code Cong. & Admin.News 2137, 2139–2143.

tive proceedings dragged on as they had been doing, most of the aggrieved parties would be denied Commission representation in court and left to their own devices to seek judicial enforcement of their rights. This was the situation the 1972 Act was designed to remedy. On the other hand, if the Commission were driven to commence judicial proceedings before the expiration of 180 days after the receipt of each complaint, attainment of the expressed congressional goal of obtaining voluntary compliance through conciliation and persuasion in most of the cases would be seriously prejudiced. In the administrative process careful study of an employer's employment practices and thorough exploration of all reasonable bases for agreement and compromise may require time. Great haste in filing judicial proceedings before the administrative procedures are mature would result in burdens and disruptions to the Commission and to employers which would hardly be calculated to further the effectiveness of procedures directed toward voluntary compliance. The congressional purpose that the possibilities of voluntary compliance by agreement be first thoroughly explored and the congressional purpose that judicial enforcement proceedings be primarily the province and responsibility of the Commission may be harmonized but not if a 180-day period from the filing of the charge is imposed for the filing of judicial proceedings.

It is suggested by Cleveland that if an employer is engaged in a continuing violation of the Act, the expiration of a 180-day period of limitations would not prevent the filing of a new charge and the commencement of a judicial proceeding founded upon the second charge within 180 days thereafter. This, however, would necessitate the filing of multiple charges and would further complicate the Commission's work with technicalities serving no useful purpose. If the processes of investigation and conciliation are proceeding actively 180 days after the filing of the charge, the Act's purposes are served by permitting the administrative processes to proceed to completion as rapidly as possible. Discontinuance and disruption in commencing new proceedings would serve no such purpose.

References in the Report of the Conference Committee of March 6, 1972 to the private right of action seem to support our literal reading of the amended section:

> * * * The retention of the private right of action, as amended, is intended to make clear that an individual aggrieved by a violation of Title VII should not be forced to abandon the claim merely because of a decision by the Commission or the Attorney General, as the case may be, that there are insufficient grounds for the Government to file a complaint. Moreover, it is designed to make sure that the person aggrieved does not have to endure lengthy delays if the Commission or Attorney General does not act with due diligence and speed. Accordingly, the provisions described above allow the person aggrieved to elect to pursue his or her own remedy under this title * * *. * * * It is hoped that recourse to the private lawsuit will be the exception and not the rule * * *. However, * * * it is necessary that all avenues be left open for quick and effective relief.

118 Cong.Rec. S. 3462 (March 6, 1972).

The Conference Committee's allusions to the "individual's election" to pursue his or her own remedy if there are long delays in the administrative process and to the necessity "that all avenues be left open for quick and effective relief" support an inference that the Commission's right to sue continues after the individual's right has matured. The allusions indicate that individual standing to sue is designed to let the individual choose between pursuing his own remedy and relying on the representation of the Commission. Clearly, that choice would be illusory if the Commission's right of action had already been extinguished.

## IV

A number of district courts have considered this question with varying results.[9] We do not have the benefit of any decision from another court of appeals, but we are persuaded that the dual congressional purpose, first, to encourage compliance through conciliation and persuasion, and, second, to place upon the Commission primary responsibility for judicial enforcement proceedings, is inconsistent with Cleveland's contention that the Commission, under the section, loses its right to seek judicial enforcement when the 180-day period following the filing of the charge expires. The text of the statute, what light we can glean from the legislative history and the basic legislative purposes sought to be served all trend against the rigid restriction of the Commission's enforcement power which Cleveland urges upon us.

## V

Cleveland understandably expresses concern that if the Commission's right to sue survives the 180-day period, the Commission and the aggrieved individual will have concurrent rights of suit for 90 days. Cleveland argues that this would be inconsistent with congressional and judicial aversion to duplicative litigation, and that only by construing § 706(f)(1) as providing consecutive, limited rights of action can this danger of duplicitous lawsuits be avoided. We need not now undertake the resolution of all of the problems that would arise if the Commission and an aggrieved party each filed an enforcement action during the 90-day period during which private actions are conditionally authorized. It is obvious, however, that the imposition of a 180-day limitation on the Commission's right to sue is not the only answer or even the best means of implementation of a policy against duplicative lawsuits. In fact, of the alternatives available, imposition of such a limitation is the most difficult to reconcile with the language of the Act and its remedial purposes. Other approaches, more in keeping with the Act and its purposes and equally effective in preventing duplicitous lawsuits, have been adopted by other courts when called upon to meet the problem of duplicitous actions.[10] We need not now choose between those other alternatives, but their existence and apparent harmony with the legislative scheme refutes Cleveland's contention that only by imposing a 180-day limitation on the Commission's right to sue can the danger of duplicitous actions be avoided.

9. Cases finding no limitation include: EEOC v. E. I. duPont de Nemours & Co., 373 F. Supp. 1321 (D.Del.1974); EEOC v. U. S. Industries, Civil No. 73–283 (W.D.Tenn.Jan. 1974); EEOC v. Huttig Sash and Door Co., 371 F.Supp. 848 (S.D.Ala.1974); EEOC v. Bartenders Int'l Union, Local 41, 369 F. Supp. 827 (N.D.Cal.1973); EEOC v. Eagle Iron Works, 367 F.Supp. 817 (S.D.Iowa 1973); EEOC v. Duff Brothers, Inc., 364 F.Supp. 405 (E.D.Tenn.1973); EEOC v. Mobil Oil Corp., 362 F.Supp. 786 (W.D.Mo. 1973). Cases finding a time limitation on the Commission's right to sue include: EEOC v. Kimberly-Clark Corp., Civil No. 73–42 (W.D.Tenn.March 27, 1974); EEOC v. Griffin Wheel Co., Civil No. 73–II–429–S (N.D.Ala.Feb. 5, 1974); EEOC v. Union Oil Co. of Cal., 369 F.Supp. 579 (N.D.Ala. 1974); EEOC v. Louisville & N. R. R., 368 F.Supp. 633 (N.D.Ala.1974); and EEOC v. Container Corp. of Am., 352 F.Supp. 262 (N.D.Fla.1972). Furthermore, another court within this circuit, when faced with the identical issue here reached a conclusion at odds with the District Court in this case. EEOC v. Christianburg Garment Co., 376 F.Supp. 1067 (W.D.Va.1974).

10. Some have held that the Commission's right to sue terminates only when an individual action is actually brought and restrict the individual to intervention as of right once a Commission action has commenced, even during the 90-day period. Others have indicated that the Commission is altogether barred from bringing suit during the individual's 90-day period, but that the Commission's right revives upon expiration of that period should the individual fail to act. See, EEOC v. Missouri Pac. R.R., 8 Cir., 493 F. 2d 71 (1974); EEOC v. Huttig Sash & Door Co., 371 F.Supp. 848 (S.D.Ala.1974); EEOC v. Cronin, 370 F.Supp. 579 (E.D.Mo. 1973); and EEOC v. Union Oil Co., 369 F. Supp. 579 (N.D.Ala.1974).

We thus conclude that the 180-day period contained in 42 U.S.C.A. § 2000e–5(f)(1) is referable to the beginning of the time within which an aggrieved party may file a private action, but that its expiration does not finally terminate the Commission's right of action. The decision of the District Court dismissing the Commission's complaint for failure to timely file, therefore, is reversed and the case remanded for further proceedings.

Reversed and remanded.