EQUAL EMPLOYMENT OPPORTU-
NITY COMMISSION, Plaintiff-
Appellant,

v.

LOUISVILLE & NASHVILLE RAIL-
ROAD COMPANY, Defendant-
Appellee.

No. 74–1185.

United States Court of Appeals,
Fifth Circuit.

Dec. 16, 1974.

Rehearing and Rehearing En Banc
Denied Jan. 30, 1975.

Wm. A. Carey, Gen. Counsel, Wm. L. Robinson, Associate Gen. Counsel, E. E. O. C., Washington, D. C., Roger J. Martinson, Acting Reg. Atty., E. E. O. C., Leonard N. Cohen, Asst. Reg. Atty., Wm. C. McNeill, III, Trial Atty., Atlanta, Ga., Joseph T. Eddins Jr., Beatrice Rosen-

berg, Charles L. Resichel, Debra A. Millenson, Washington, D. C., for plaintiff-appellant.

Charles A. Powell, III, Birmingham, Ala., Marvin D. Jones, Louisville, Ky., for defendant-appellee.

James P. Alexander, John J. Coleman, Jr., Evans, Dunn, Birmingham, Ala., for Guaranty Sav. & Loan Ass'n, amicus curiae.

Before MOORE*, AINSWORTH and RONEY, Circuit Judges.

AINSWORTH, Circuit Judge:

■ The principal question in this case is whether there is a 180-day limitation on the power of the Equal Employment Opportunity Commission to bring actions under Title VII, Subchapter VI, of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (1974). We hold that the statute contains no limitation, and accordingly reverse the district court.

I. Background of the Litigation

On February 28, 1970, Ben Thomas, a black male, was discharged by defendant Louisville & Nashville Railroad Company (L & N) for falsely answering an employment application question concerning his involvement in claims or suits for damages. On April 27, 1970, Thomas filed a charge with EEOC alleging he was discharged because of his race.

On November 4, 1970, EEOC's District Director found that the discharge was not racially motivated. On January 28, 1972, the Commission adopted the District Director's finding that the Charging Party (Thomas) was not discharged because of race. It also found, however, that L & N had a practice of considering arrest records and using certain pre-employment tests in its hiring decisions, which provided reasonable cause to believe L & N was engaging in unlawful employment practices.

In accordance with the relevant statutory provisions, 42 U.S.C. § 2000e–5(b) (1974), L & N and EEOC began conciliation efforts, meeting initially on March 9, 1972. On May 31, 1972, the Commission notified L & N that it had sent a notice of right-to-sue to the Charging Party (Thomas) because conciliation had not led to voluntary compliance with Title VII by L & N. *See* 42 U.S.C. § 2000e–5(f)(1) (1974), 29 C.F.R. § 1601.25 (1972). On July 16, 1973, the Commission brought this action in the district court, which held that Section 706(f)(1) of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5 (f)(1) (1974), empowering the Commission to sue, contains a 180-day limitation on EEOC's right of action, barring the present claim. Alternatively the court held that the Commission had failed to comply with its own regulations concerning notice of termination of conciliation efforts.

II. Whether the Statute Limits EEOC's Right of Action

A. The Words of the Statute in the Context of Title VII

Section 706(f)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f)(1), as amended, provides in relevant part:

If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. . . . If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of

---

* Hon. Leonard P. Moore, Senior Circuit Judge of the Second Circuit, sitting by designation.

such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved . . . .

This text, taken in its ordinary meaning, creates two rights. First, the Commission is empowered to bring civil actions if conciliation has failed, provided that thirty days have elapsed since the filing of the charge. Second, the Charging Party may bring his own action if the Commission has dismissed his charge or has taken no action within one hundred and eighty days. No explicit time limitation on the Commission's right to bring civil actions is mentioned in the subsection.

Other provisions of the Act do contain explicit limitations. For example, the private right of action authorized by Section 706(f)(1) contains a definite 90-day limitation on such suits. The private suit limitation makes the absence of any specific limit for Commission actions all the more conspicuous, and the difference must be taken to be intentional. The limitations provided elsewhere in Title VII are similarly specific and direct. In Section 706(e) the statute provides "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ." Section 706(c) states that

. . . no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated . . . .

*See also* Section 706(g), 42 U.S.C. § 2000e–5(g) (1974), relating to back pay ("Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission.").

The enactment containing the 1972 amendments provided that the Commission's newly-created right of action extended to all charges then pending. Section 14, P.L. 92–261, 86 Stat. 113 (1972) (over 40,000 cases—*see* S.Rep. No. 92–415, 92d Cong., 1st Sess. 5, 6, 87 (1971) U.S.Code & Admin.News, 1972, p. 2137). It was apparent that the Commission would be precluded from acting on most of the crush of pre-1972 cases if a 180-day limitation applied. Even if the alleged 180-day limitation were construed to run from the date of the amendment applying the Commission's new right to bring suit in pending cases (March 24, 1972), most of these cases could not have been brought in time because of the enormous backlog. *See* EEOC v. Christiansburg Garment Co., Inc., W.D. Va., 1974, 376 F.Supp. 1067, 1070. "There is a presumption against a construction which would render a statute ineffective or inefficient . . . ." United States v. Powers, 307 U.S. 214, 217, 59 S.Ct. 805, 807, 83 L.Ed. 1245 (1939). We are reluctant to nullify the provision extending the Commission's right to sue in pending cases, especially when the plain language of the statute points in the other direction.

L & N argues that the statute establishes one right of action held first by the Commission for one hundred and eighty days and then by private parties for ninety days, rather than two parallel rights. In support of its position L & N points to special rules of construction for statutes creating new causes of action, to EEOC's own regulations, and to the limitation on the Commission's right to intervene in private actions. None of these considerations, however, contradicts the interpretation we have set forth above.

If a statute creating a new cause of action contains a time limit,

**614**

that limit is a restriction on the right itself. Such restrictions usually are construed more strictly than ordinary statutes of limitation. United States ex rel. Texas Portland Cement Co. v. McCord, 233 U.S. 157, 162, 34 S.Ct. 550, 552, 58 L.Ed. 893 (1914); Simon v. United States, 5 Cir., 1957, 244 F.2d 703, 704; Northern Metal Co. v. United States, 3 Cir., 1965, 350 F.2d 833, 837.

■ L & N contends Section 706(f)(1) does create a new cause of action, and therefore a stricter interpretation should be placed on the statute, leading to the conclusion that the running of 180 days terminates EEOC's cause of action. The flaw in this argument is that the strict rules invoked by L & N do not come into play until the court finds a limitation in the statute. These rules prohibit a relaxation of an express limitation, but they "are not helpful in determining whether a limitation should be implied." EEOC v. DuPont de Nemours, D.Del., 1974, 373 F. Supp. 1321, 1327 n. 4. Clearly Congress can create a right without fixing a time limitation, see Anderson v. United States Atomic Energy Com'n., 7 Cir., 1963, 313 F.2d 313, 316, and we believe it did so in Section 706(f)(1).

The Commission's regulations are even less convincing as evidence of a limitation in the statute. They provided that issuance of a notice of right-to-sue to a Charging Party "suspend[s] further Commission proceedings unless the Field Director determines it is in the public interest to continue such proceedings . . ." 29 C.F.R. 1601.-25a(d) (1972). In contrast, 29 C.F.R. 1601.25b(e) (1972) provided that notice to members of an aggrieved class of persons affected by conduct that is the basis of a *Commission-initiated* charge does not terminate the Commission's jurisdiction. From this distinction L & N infers that the Commission's own regulations acknowledge the expiration of its authority over a case upon notice of right-to-sue to a Charging Party. The fact that the Field Director has discretion to process the case beyond the 180-day period, however, belies the assertion, repeatedly advanced by L & N, that the alleged limitation on EEOC's right of action is "jurisdictional." Moreover, § 1601.25a(d) has now been amended to conform to § 1601.25b(e), thus eliminating the distinction on which L & N's argument is based. See 29 C.F.R. § 1601.-25b(e) (1973).

■ L & N also suggests that the provision limiting EEOC's right of intervention in private actions indicates limits on its right to sue. Section 706(f)(1) provides that "the court may, in its discretion, permit the Commission . . . to intervene in such civil action [by a private party] upon certification that the case is of general public importance." The existence of this right does not indicate that the Commission's right to sue terminates at the beginning of the period during which the Charging Party may sue. The Commission's right to bring actions after one hundred and eighty days does not render its right of intervention superfluous. Large groups of employees whom the EEOC is charged with protecting would be bound by judgments entered in class actions brought by private parties. The Commission's right to sue could not prevent this injury, but its right to intervene does.

■ EEOC's right of intervention is narrower than permissive intervention under the Federal Rules, see Fed.R.Civ. P. 24(b), but this restriction is not designed to limit the time within which the Commission may sue. Rather,

"Congress had a paramount concern that the aggrieved employee secure prompt relief and may have been sensitive to the possibility that intervention by the Commission could broaden an individual suit and thereby delay relief for the aggrieved individual. It may be for this reason that Congress decided to give the court discretion as to intervention and prohibit Commission involvement except in those cases of 'general public importance' . . . .

EEOC v. DuPont de Nemours, *supra*, 373 F.Supp. at 1331 n. 15.

### B. The Legislative History

The plain words of the statute, especially when construed in light of the entire statutory scheme, strongly support the conclusion that there is no time limit on the Commission's right of action. This conclusion is reinforced by the legislative history.[1]

At one stage in the passage of the 1972 amendments to Title VII, Congress seriously considered a bill granting cease and desist powers to EEOC. That proposal contained an explicit 180-day limitation on the Commission's enforcement powers. Senate Bill No. 2515, 92d Cong., 1st Sess. 48 (Oct. 28, 1971). The omission of the limitation from the final version weakens L & N's contention that a 180-day time limit on EEOC's right to sue is to be implied from the 180-day ban on private actions.

The differences between the final version of the 1972 amendments and the pre-1972 statute also negate the suggestion that a limitation should be implied. Before the 1972 amendments, EEOC had no enforcement power but the Charging Party could bring an action after thirty days of conciliation efforts by the Commission. *See* Section 706(e), Civil Rights Act of 1964. The 1972 amendment barring private actions for 180 days is designed to give the Commission a more realistic period to pursue conciliation. It "serves its apparent purpose when it limits the time before which a private action may not be filed and thus avoids potential interference with the Commission in the performance of its primary duties of conciliation and enforcement." EEOC v. Cleveland Mills, 4 Cir., 502 F.2d 153 (mimeo). It has no bearing on actions brought by the Commission.

The commentary accompanying the bill at various stages in its progress through the Congress shows no conclusive indication that a limitation was intended and contains much evidence to the contrary. It is apparent that the 1972 amendments were designed to make the Commission the major enforcer of the equal employment provisions of Title VII:

> [Section 706(f)(1)] allow[s] the person aggrieved to elect to pursue his or her own remedy under this title in the courts where there is agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution. It is hoped that recourse to the private lawsuit will be the exception and not the rule . . . . However, . . . it is necessary that all avenues be left open for quick and effective relief.

118 Cong.Rec.S. 3462 (March 6, 1972).

The Fourth Circuit interpreted this passage recently in the Cleveland Mills case, 4 Cir., No. 73–2298 (1974) 502 F. 2d 153:

> [The commentary] indicate[s] that individual standing to sue is designed to let the individual choose between pursuing his own remedy and relying

---

1. A substantial majority of the courts that have considered the limitations issue have concluded that the statute contains no time limit. EEOC v. Cleveland Mills, 4 Cir., 1974, 502 F.2d 153; EEOC v. Western Electric Co., D.Md., 1974, 382 F.Supp. 787; EEOC v. Rollins, Inc., N.D.Ga., 1974 [Civ. No. 74–123, June 7, 1974]; EEOC v. Christiansburg Garment Co., W.D.Va., 1974, 376 F. Supp. 1067; EEOC v. E. I. DuPont de Nemours & Co., D.Del., 1974, 373 F.Supp. 1321; EEOC v. Huttig Sash and Door Co., S.D.Ala., 1974, 371 F.Supp. 848; EEOC v. U. S. Industries, W.D.Tenn., 1974 [Civ. No. 73–283, January 2, 1974]; EEOC v. Eagle Iron Works, S.D.Iowa, 1973, 367 F.Supp. 817; EEOC v. Duff Bros., Inc., E.D.Tenn., 1973, 364 F.Supp. 405; EEOC v. Mobil Oil Corp., W.D.Mo., 1973, 362 F.Supp. 786; EEOC v. Bartenders Int'l Union, etc., Local No. 41, N.D.Cal., 1973, 369 F.Supp. 827; EEOC v. Hickey-Mitchell Co., E.D.Mo., 1973, 372 F.Supp. 1117. See contra, EEOC v. General Dynamics Corp., N.D.Tex., 1974, 382 F. Supp. 59; EEOC v. Kimberly-Clark Corp., W.D.Tenn., 1974, 380 F.Supp. 1106; EEOC v. Birmingham Stove & Range Co., N.D.Ala., 1974 [Civ. No. 73–M–201, February 27, 1974]; EEOC v. Griffin Wheel Co., N.D. Ala., 1974 [Civ. No. 73–H–429–S, February 5, 1974]; EEOC v. Union Oil of Cal., N.D. Ala., 1974, 369 F.Supp. 579.

on the representation of the Commission. Clearly, that choice would be illusory if the Commission's right of action had already been extinguished. Cleveland Mills, *supra*, 502 F.2d at 157. We concur in this reading.

Other inferences from the legislative history are possible. The floor debates in Congress contain suggestions of limitation, but these passages are highly ambiguous at best. Senator Dominick, one of the leading proponents of court enforcement instead of cease and desist powers, stated during the debate on the 1972 amendments:

> The amendment contains several cosmetic differences from the original amendment as well as one substantial change which reduces the time period within which the Commission may file a civil action against the respondent from 180 to 150 days from the time the Commission first issues its formal charge. 118 Cong.Rec.S. 1307 (Feb. 7, 1972).

At another point in the debate, however, the Senator notes "We can shorten the 180-day *private filing restrictions* as far as I am concerned, but . . . I do not think the Commission should be mandated on what date an agency should bring suit when we are trying to work out matters the best we can by conciliation." (Emphasis added). 118 Cong. Rec.S. 470 (Jan. 25, 1972).[2]

### C. The Purposes of the Act and the 1972 Amendments

An implied 180-day limitation on the Commission's right of action would also be at odds with the purposes of Title VII and the 1972 amendments. Congress recognized that full compliance with Title VII could not be achieved by the Commission working with conciliation powers alone. 1972 Code Cong. & Admin.News at 2139–2140. The 1972 amendments were intended to strengthen Title VII rights. To imply a highly restrictive limitation would be to take back with one hand what Congress tried to give with the other.[3]

Congress clearly was aware of the enormous backlog facing the Commission, see H.R.Rep. No. 92–238, 92d Cong. 1st Sess. 3–5, 12 (1971); S.Rep. No. 92–415, 92d Cong. 1st Sess. 5–6, (1971); 1972 U.S.Code Cong. & Admin. News 2137, 2139–2143, and of the additional burdens about to be created by expansion of the Commission's jurisdiction. *See* 118 Cong.Rec.S. 697 (Jan. 21, 1972). We cannot infer, without very convincing evidence, that Congress intended to curtail so severely the duration of EEOC's authority in the face of these demands on its limited enforcement resources. "A statute susceptible of more than one meaning," as Section 706(f)(1) arguably is, "must be read in the manner which effectuates rather than frustrates the major purpose of the legislative draftsmen." Shultz v. Louisiana Trailer Sales, Inc., 5 Cir., 1970, 428 F.2d 61, 65. *See generally* Securities & Exchange Com'n. v. Joiner, 320 U.S. 344, 350, 64 S.Ct. 120, 123, 88 L.Ed. 88 (1943); Haggar Co. v. Helvering, 308 U.S. 389, 394, 60 S.Ct. 337, 339, 84 L.Ed. 340 (1940); Hattaway v. United States, 5 Cir., 1962, 304 F.2d 5, 9. This principle deserves special consideration when

---

2. Senator Javits, a leading proponent of the cease and desist format, also indicated that he believed the final version was to contain a limitation:

 Let us understand that we are dealing with a round period of approximately 150 days, that that is the allowable time for the Commission to move into a given situation.

 118 Cong.Rec.S. 1800 (Feb. 15, 1972). A few days earlier, however, Senator Javits stated "I feel the Commission should not, in view of its purpose, be under the kind of strict timetable . . . that the amendment sets out that it would otherwise be if we left the word 'shall' which is mandatory." (Referring to the passage "the Commission *may* bring a civil action" in Section 706(f)(1)). 118 Cong.Rec.S. 470 (Jan. 25, 1972).

3. We note that the 180-day limitation pressed by L & N would be far shorter than the limitations provided in many remedial statutes. *See, e. g.,* the Clayton Act, 15 U. S.C. §§ 12–27 (4-year period).

the statute in question is a broadly remedial one. *See* Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967).

In addition to foreclosing effective relief for a large number of complainants, the 180-day limitation would hamper conciliation by forcing the Commission to file suit lest its right be cut off. It is doubtful that Congress would have required EEOC to certify that conciliation had failed before suing but would have seriously compromised the Commission's ability to conciliate by limiting it to 180 days.[4]

L & N does not dispute that Congress was concerned with EEOC's backlog, but argues that the 1972 amendments were designed to "force expedition in the place of slothful neglect" by placing time limits on the Commission's authority. Although the legislative history is dotted with references to the Commission's backlog, *see, e. g.*, 1972 U.S.Code Cong. & Admin. News 2147, we find no significant indication that Congress attributed the backlog to inefficiency.[5]

### III. L & N's Other Contentions

 Defendant offers three other grounds for affirming the judgment below. The trial court held in the alternative that the Commission did not give proper notice of failure to conciliate, in violation of its own regulation, 29 C.F.R. § 1601.23 (1972). L & N also contends that the Commission did not execute all the steps that are conditions precedent (charge, notice, investigation, finding of reasonable cause, attempted conciliation) to filing suit, and that the Commission

did not seek conciliation in good faith. The Commission's notice of failure to conciliate, which included a copy of the right-to-sue letter it issued to the Charging Party, was completely adequate and in conformity with its regulations. 29 C.F.R. § 1601.25 (1972). As for the conditions precedent, it is clear that the Commission executed each step before filing suit. Defendant's objection is actually to the difference between the initial charge of racial discrimination filed by Thomas and the Commission's findings concerning use of arrest records and pre-employment tests. We find that objection to be without merit. *See* Sanchez v. Standard Brands, Inc., 5 Cir., 1970, 431 F.2d 455, 466. Finally, the charge of bad faith is simply not supported by the record.

Our ruling at this phase of the case does not intimate any view on the merits. On remand the district court should consider whether there are equitable defenses available to defendants under the peculiar facts and circumstances that will be developed on the merits of the case.

Reversed and remanded.

MOORE, Circuit Judge (dissenting):
I dissent.

The main question in this case is whether section 706(f)(1) of Title VII of the Civil Rights Act of 1964, as amended, [42 U.S.C. § 2000e–5(f)(1)] imposes a 180-day durational limit on the right of the Equal Employment Opportunity Commission to institute judicial proceedings for the redress of allegedly unlawful employment discrimina-

---

4. L & N points to the provision for a sixty-day stay by the District Court after EEOC has filed, and contends that this feature of the enforcement scheme would permit conciliation to continue. In many cases, however, even two additional months of conciliation would be insufficient. L & N notes that the National Labor Relations Board needs, on the average, 7.5 months to process a charge. This comparison is not helpful, however, since EEOC is a new agency with considerable backlog and problems that substantially

differ from those of the NLRB. Moreover, to imply a 180-day limitation at the very least would make it necessary for the Commission's negotiators to acquaint a new set of personnel—those managing the litigation—with the details of the case. This transition would delay and upset the conciliation process even further.

5. *Cf.* House Labor Committee Report, June 2, 1971, in "The Equal Employment Opportunity Act of 1972," Bureau of National Affairs, Wash., D.C. (1973), at 248.

tion. The issue has caused a split in judicial opinion which is perhaps sharper than usual, indicating that the often elusive Congressional intent is in this case particularly obscure. In terms of sheer numbers, the weight of judicial authority holds that section 706(f)(1) sets no time limitation on the right of the Commission to sue.[1] Fortunately, however, it is the persuasiveness of judicial reasoning and not the force of numbers which is of prime importance in our system. And although the question is admittedly not entirely clear, I am personally convinced that those courts holding that section 706(f)(1) does indeed impose a 180-day limit have properly interpreted the statute.

As the majority acknowledges, it is possible to cite portions of the legislative history which support either position.[2] Thus, I do not feel that this referent is particularly helpful in this instance. Rather, the language of section 706(f)(1) must be read and interpreted with a view toward the broad Congressional purposes underlying Title VII—that prompt, efficient methods be enacted and utilized to eradicate racial and sex discrimination in employment. *See, e. g.,* EEOC v. General Dynamics Corp., No. CA 4–74–54, 382 F.Supp. 59 (N.D.Tex., 1974). In my view, affording the Commission a right to sue which is without a definite limit is anathema to that goal.

The United States Court of Appeals for the Eighth Circuit recently summarized the procedure established by the 1972 amendments to Title VII and particularly by section 706(f)(1).

1. A charge must be filed within 180 days after the occurrence of an alleged unlawful employment practice.

2. If the Commission finds reasonable cause to believe that the charge is true, and conciliation attempts prove unsuccessful, the Commission may bring suit against the respondent within 180 days of the filing of the charge. The charging party shall have the right to intervene in the Commission's suit.

3. If the Commission fails to file an action within 180 days, it shall notify the charging party.

4. Within 90 days after receipt of notice, the charging party may bring a civil action against the respondent. Should a private action be brought, the Commission may intervene, in the discretion of the court, upon certification that the case is of general public importance.

EEOC v. Missouri Pacific R. R., 493 F. 2d 71, 74 (8th Cir. 1974). On its face this is an orderly procedure which for 30 days gives the Commission an opportunity to investigate and seek conciliation, for 150 additional days affords the Commission the right to sue while at the same time seeking an accommodation with the employer, and finally, after 180 days, grants the aggrieved individual a right of action for 90 days. Yet the Commission asserts that its authority to sue continues beyond the 180-day mark when the private right of action accrues. Reading the statute otherwise would, according to the Commission, unduly hamper the performance of its task, since 180 days is insufficient time to negotiate with the alleged violator. Moreover, the necessity of filing a suit to meet the 180-day deadline would assertedly interfere with conciliation efforts.

There is no doubt that Congress was well aware of both the average time necessary to process complaints and of the backlog which was confronting the Commission at the time of the 1972

---

1. See cases cited in footnote 1 of the majority opinion.

2. See EEOC v. Union Oil Co. of California, 369 F.Supp. 579, 580–584 (N.D.Ala.1974), where the court summarized the arguments, pro and con, regarding the 180-day limit and cited pertinent portions of the legislative history.

amendments.[3] But to conclude that Congress could therefore not have intended to impose a time limit on the Commission seems to me erroneous.[4] A stronger inference is that Congress intended to expedite the administrative process and to eliminate the interminable delays which had previously been the rule. The entire thrust of section 706(f)(1) is toward increased efficiency. Starting with the filing of the charge, Congress set up a timetable—30 days for pure conciliation, 180 days for further negotiations before a right to sue letter issues to the private individual, 90 days in which the aggrieved party can bring suit. Congress clearly contemplated that the conciliation process would begin almost immediately and that serious efforts would be made before the individual was given the right to sue privately. To hold that the Commission has an open-ended period in which it may bring an action seems calculated to encourage delays and to undermine conciliation efforts. It is well-known that an imminent deadline, and in particular the pendency of a lawsuit, is apt to make even the most hard-line bargainers soften their position. Thus, a 180-day limit on the Commission's right to sue seems likely to promote settlements. And merely because the 180th day comes and a suit is filed does not mean that talks

must terminate. Nothing prohibits the settlement of a pending lawsuit, and in fact section 706(f)(1) explicitly refers to the possibility of settlement by giving the district court discretion to stay proceedings for 60 days while the Commission makes further efforts to achieve voluntary compliance.

Further supporting a reading of the statute which imposes a 180-day limit on the Commission is avoidance of duplicative lawsuits. If the Commission's right to bring judicial proceedings is not cut off when the right of the individual starts, there is a significant chance that two lawsuits will be pending which deal with substantially identical issues.[5] Various courts have dealt with this problem [6] and solutions other than reading the statute as imposing 180-day limit are available. It would be possible to hold, for example, that the Commission's right to sue terminates only when an individual actually starts proceedings. The Commission itself has suggested that it may not bring an action during the 90-day period in which the aggrieved individual has the right to sue, but that its right revives upon the expiration of the 90-day period if the individual has taken no action.[7] Either of these alternatives tortures the language of the statute when a simple, straightforward

---

3. See House Report No. 92–238, 92d Cong. 1st Sess. 3–5, 12 (1971), Senate Report No. 92–415, 92d Cong. 1st Sess. 5–6, 87 (1971); 1972 U.S.Code Cong. & Admin.News 2137, 2139–2143.

4. Apparently no court has yet dealt with the problem of whether suits based on charges already pending before the Commission for over 180 days at the time of the 1972 amendments are foreclosed. This case does not present the issue, since the charge here was filed after the amendments. In view of the fact that the amendments were made applicable to already pending cases, however, it would not be an unreasonable position that in these cases the 180-day period began running from the date of the amendments and not the date of filing of the charges.

5. It is clear that when Congress was considering the alternative course of giving the EEOC power to issue cease and desist or-

ders, avoidance of duplicative proceedings was of major concern. E. g., House Report No. 92–238, 92d Cong. 1st Sess. (1971), U.S.Code Cong. & Admin.News 1972, p. 2137. Although the same concern does not appear expressly after the cease and desist proposal was dropped in favor of allowing the Commission to seek pretrial enforcement, there is no reason why the problem of duplicative proceedings is just as significant when they are both judicial in nature.

6. See EEOC v. Missouri Pac. R. R., 493 F. 2d 71 (8th Cir. 1974); EEOC v. Huttig Sash & Door Co., 371 F.Supp. 848 (S.D. Ala.1974); EEOC v. Cronin, 370 F.Supp. 579 (E.D.Mo.1973); EEOC v. Union Oil Co. of California, 369 F.Supp. 579 (N.D.Ala. 1974).

7. EEOC v. Cleveland Mills Co., 364 F.Supp. 1235, 1238 (W.D.N.C.1973), rev'd., No. 73–2298, 502 F.2d 153 (4th Cir. 1974).

reading obviates the necessity of making such semantic contortions.

I do not dispute that the 1972 amendments made the Commission the prime enforcer of Title VII rights, but a 180-day limit seems in no way inconsistent with that goal. The Commission is given first crack at enforcement for a period of six months. And even when the right of action accrues to the individual, the Commission retains a limited right of intervention when a case is of public importance. This role is undeniably substantial, and I am not convinced that Congress intended to enlarge it by granting an unlimited right to sue, for this right will, I believe, tend to undercut the effectiveness of the Commission as the first line of enforcement.

Accordingly, I would affirm the dismissal of the suit.