**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

v.

**UNITED AIRCRAFT CORPORATION, PRATT & WHITNEY AIRCRAFT DIVISION.**

**Civ. No. H 74–116.**

United States District Court, D. Connecticut.

Oct. 1, 1974.

Raymond D. Goodman, Equal Opportunity Commission Philadelphia, Pa., for plaintiff.

Abner W. Sibal, Washington, D.C., for defendant.

## RULING ON MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

CLARIE, Chief Judge.

Plaintiff Equal Employment Opportunity Commission (EEOC or Commission) commenced this action on April 11, 1974, pursuant to § 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3). The complaint alleges that the defendant-employer, United Aircraft Corporation, Pratt and Whitney Aircraft Division (Pratt and Whitney) has engaged in unlawful employ-

ment practices in violation of Title VII. The defendant has moved to dismiss the complaint, or, in the alternative, for summary judgment, on the grounds that the Commission has failed to comply with certain procedural requirements of Title VII. The Court will treat the motion as one for summary judgment, Rule 12(b) Fed.R.Civ.P.; and after considering the pleadings, affidavits, memoranda and oral arguments of counsel, the Court finds that the motion must be denied.

The facts which form the procedural background prior to the filing of this complaint are not in dispute. In July, 1970, Samuel Henley (the Charging Party), an employee of Pratt and Whitney, filed a charge of employment discrimination, in letter form, with the EEOC. Pursuant to the provisions of § 706(b) of the 1964 Act, the charge was referred to the Connecticut Commission on Human Rights and Opportunities.[1] On October 12, 1970, after the expiration of the sixty day period of referral required by § 706(b), and at the request of the Charging Party, the EEOC asserted jurisdiction over the charge. Seventeen months later, on March 14, 1972, a Commission representative was assigned to investigate the charge.

On March 29, 1972, Pratt and Whitney was sent a "notice of charge" form. The EEOC investigator thereupon interviewed both the Charging Party and officials of Pratt and Whitney, and on April 13, a copy of the "Charge of Discrimination," amended to include the oath of the Charging Party, was served on Pratt and Whitney. The Commission's "findings of fact," which supported the allegations of the Charging Par-

ty, were sent to the defendant on June 14, 1972, and, pursuant to the regulations of the Commission then in effect, Pratt and Whitney filed exceptions to those findings.[2] The parties then engaged in voluntary settlement discussions, but without success.

Finally, on February 23, 1973, the EEOC Regional Director issued a determination that reasonable cause existed to believe the charges were true and invited the parties to enter into conciliation. This invitation was accepted by the Charging Party, but rejected by Pratt and Whitney. On November 29, 1973, the EEOC Regional Attorney notified Pratt and Whitney that the Commission had authorized the filing of suit. The Regional Attorney provided Pratt and Whitney with a copy of the proposed complaint and offered to discuss the possibility of a voluntary resolution of the issues, before suit was filed. The plaintiff's offer was again rejected and on April 11, 1974, nearly four years after the date of the last alleged act of discrimination, the Commission commenced this action.

As the chronology of events indicates, the process of resolving these charges has already extended over an extremely long period. Counsel for the plaintiff Commission has pointed out that such delays are not uncommon in Commission proceedings and that changes in the EEOC administrative structure contributed to the problem in this instance.[3] The Court, however, does not find this explanation completely satisfying. Talk of case backlogs and bureaucratic delay is of little consolation either to employees with alleged grievances, in whom

---

1. Section 706(b) provided in pertinent part that:
   "In the case of an alleged unlawful employment practice occurring in a State . . . which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State . . . authority to grant or seek relief from such practice . . . no charge may be filed under subsection (a) by the person aggrieved before the expiration of sixty days after proceedings

have been commenced under the State or local law . . . ."

2. 29 C.F.R. § 1601.19a and b.

3. According to affidavits filed by the Commission, this charge was among the more than 500 pending charges transferred from the New York Regional Office to the newly-opened Boston District Office in August, 1971, when the latter office apparently had only a skeleton staff.

expectations of prompt action may have been falsely raised, or to employers, who could conceivably be prejudiced by the existence of long-pending but unproven charges. Neither side can benefit from such lengthy delays, during which witnesses may become unavailable, evidence is likely to become stale, and employment practices may undergo change. If the reason for these delays lies in inadequate staffing and funding, then the ultimate solution is to be found not in the federal courts, but in the Congress. The precise question before the Court at this time is whether or not the plaintiff has failed to comply with "specific statutory requirements" prior to the bringing of suit, thus rendering its claim "fatally defective and invalid, as a matter of law." While the statutory language itself yields no clear answer to this question, that language has received authoritative judicial interpretation; and on the basis of this interpretation, the Court must answer the question in the negative.

■ Pratt and Whitney argues that the complaint is insufficient on its face, because it fails to recite specifically that the Commission has performed each of the administrative steps set forth in § 706(b) prior to bringing suit.[4] The defendant cites one case for the proposition that each step must be specifically pleaded. Equal Employment Opportunity Commission v. Container Corp. of America, 352 F.Supp. 262 (M.D.Fla. 1972). The weight of authority, however, is so clearly to the contrary as to make the defendant's claim almost frivolous. E. g., Equal Employment Opportunity Commission v. Standard Forge and Axle Co., 496 F.2d 1392 (5th Cir. 1974); Equal Employment Opportunity Commission v. Wah Chang Albany Corp., 499 F.2d 187 (9th Cir. 1974); Equal Employment Opportunity Com-

mission v. Laacke and Joys Co., 375 F. Supp. 852 (E.D.Wis.1974); Equal Employment Opportunity Commission v. Firestone Tire and Rubber Co., 366 F. Supp. 273 (D.Md.1973); also see, Rule 9(c), Fed.R.Civ.P.

A more substantial question is raised by the defendant's position that certain time periods set forth in Title VII should be interpreted as statutes of limitations so as to defeat the Commission's right to bring this suit. The question arises with respect to two basic issues: (1) was Mr. Henley's charge still "pending" before the Commission on the date the 1972 amendment to Title VII took effect; and (2) does the Commission have the authority to bring this suit more than 180 days after the filing of the charge of discrimination.

*Pending Charge*

■ Under the original provisions of the Civil Rights Act of 1964, the EEOC did not have the authority to bring suit in its own right its enforcement powers were limited to the seeking of a voluntary resolution of charges through "informal methods of conference, conciliation, and persuasion."[5] The Equal Employment Opportunity Act of 1972 gave the Commission the power to bring suit on charges filed with it and § 14 of that Act provided that:

"The amendments made by this Act to section 706 of the Civil Rights Act of 1964 shall be applicable with respect to charges pending with the Commission on the date of enactment of this Act and all charges filed thereafter."

It is the defendant's contention that the charge in question was no longer pending on March 24, 1972, the date of enactment, and that therefore the Commission could not exercise its newly acquired power to sue with respect to that charge.

---

4. Section 706(b), 42 U.S.C. § 2000e–5(c), provides, *inter alia*, that the Commission shall serve a notice of charge upon a respondent, conduct an investigation, make a determination of reasonable cause, and engage in "conference, conciliation, and persuasion."

5. Sections 706(a), Civil Rights Act of 1964, as amended.

In support of this position, the defendant cites § 706(e) of the 1964 Act, which provided in pertinent part:

"If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) (except that in either case such period may be extended to not more than *sixty days* upon a determination by the Commission that further efforts to secure voluntary compliance are warranted), the Commission has been unable to obtain voluntary compliance with this title, the *Commission shall so notify* the person aggrieved and a civil action may, *within thirty days thereafter*, be brought against the respondent named in the charge (1) by the person claiming to be aggrieved . . . ." (Emphasis added).

Applying this language to the facts of this case, Pratt and Whitney argues that as of October 12, 1970 (the date of the expiration of the sixty day period of reference to the State Commission) the EEOC had, at the most, sixty more days in which to obtain voluntary compliance; that at the expiration of this period, on December 12, 1970, the Commission was obligated to notify the Charging Party of his right to sue; and that the Charging Party then would have had thirty days in which to institute suit. Thus, according to the defendant, the Charging Party's complaint became "stale" as of January 12, 1971, and could not have been "pending" when the Act was amended to give the Commission power to bring suit.

Despite the apparent logic of this argument, based on the literal wording of the statute itself, the defendant's interpretation of the statutory time periods as "mandatory" rather than "directory" has been generally rejected by courts construing this provision of the 1964 Act. Miller v. International Paper Co., 408 F.2d 283 (5th Cir. 1969); International Brotherhood of Electrical Workers v. United States EEOC, 398 F.2d 248 (3d Cir. 1968); Cunningham v. Litton Industries, 413 F.2d 887 (9th Cir. 1969); Austin v. Reynolds Metal Co., 327 F.Supp. 1145 (E.D.Va.1970); EEOC v. Mobil Oil Corp., 362 F.Supp. 786 (W.D.Mo.1973).

Support for this result has been found primarily in the recognition that strict enforcement of a sixty day limitation period against the EEOC would frustrate the Congressional intent to promote voluntary conciliation of charges rather than judicial enforcement.

"The clear intent of Congress in passing this statute was to prefer private and informal conciliation. To require the EEOC to investigate a charge, determine its merits, attempt conciliation and also determine any further efforts to be fruitless within a 60 day period would severely lessen the chances of private settlement in many cases." Cunningham v. Litton Industries, 413 F.2d 887 (9th Cir. 1969).

The Court's conclusion that the charge under consideration was "pending" with the Commission on March 24, 1972, is further supported by the discussion of the pending charge issue by the only other court which has explicitly dealt with the question up to this time. EEOC v. Christiansburg Garment Co., Inc., 376 F.Supp. 1067 (W.D.Va.1974). The charge in that case had been filed in 1968, an investigation had been conducted, a right to sue letter had issued on July 1, 1970, and no further action had been taken until December, 1973, when the EEOC announced its intention to file suit. Under those circumstances, the court determined that no further action remained to be taken under the 1964 Act, once the right to sue letter had been issued and that to accept the argument that the charge was still pending in March, 1972, would be to hold that any charge filed after the effective date of the original Act and not dismissed by the EEOC or settled in conciliation could be said to be "pending" for purposes of applying the 1972 amendments.

The situation presented to this Court is different, however. Here no right to sue letter had been issued. The Commission's investigation had just begun, at the time the 1972 amendments became effective. Thus the charge would seem to fit within the terms of the *Christiansburg* court's comment that the "charges pending" phrase should be applied only to "charges which the Commission was still pursuing toward conciliation" on March 24, 1972. 376 F.Supp. at 1073.

The discussion in *Christiansburg* of the legislative history of § 14 of the 1972 Act is consistent with this conclusion. As that court pointed out, § 14 originated as a floor amendment offered by Senator Javits after the Senate and House bills [6] had been reported out of their respective committees with provisions specifically making the amendments to § 706 applicable only to charges filed after the effective date of the 1972 Act. In support of his amendment, Senator Javits cited a letter from the Department of Justice, part of which was quoted in *Christiansburg:*

> "Secondly, the present provisions of S.2515 (Sec. 13) contemplate that the new enforcement provisions would only apply to charges filed after its effective date. We see no reason why the many thousands of persons who have filed charges which are still being processed and who have waited as long as 18 months to two years for resolution of them should not have the benefit of the new enforcement authority." 376 F.Supp. at 1074.

It therefore appears that the charge in this case, which had been pending approximately seventeen months, and had just entered the initial stages of investigation, does come within the category of pending charges to which the 1972 amendments, including the one giving the Commission authority to bring suit, were intended to apply.

## 180 Day Issue

■ The defendant's second major contention regarding statutory time limits is based on the section of the 1972 Act which authorized the Commission to bring suit. Section 706(f)(1), 42 U.S.C. § 2000e–5(f)(1) provides in pertinent part:

> "If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section . . . the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved . . . ."

The defendant asserts that the 180 day provision should be construed to impose a cut-off date beyond which the Commission may not bring suit; in this case that date would be 180 days after the 1972 Act became effective. The Commission, on the other hand, argues that the 180 day period is merely the time during which the Commission has exclusive jurisdiction over a charge and that its power to sue continues during, and even after, the subsequent 90 day period during which the individual may file suit. Once again the Court is asked to interpret ambiguous statutory language which was not clearly drafted to achieve the purposes now attributed to it. The weight of judicial authority persuades this Court to conclude that there is no statutory bar to the bringing of suit by the EEOC more than 180 days after a charge has been filed with it.

This is the conclusion most recently decided by the Fourth Circuit in what

---

**6.** S. 2515, H.R. 1746.

appears to be the only Circuit Court opinion on that question to date. EEOC v. Cleveland Mills Co., 502 F.2d 153 (4th Cir., 1974). That court stated that a "literal reading" of the new § 706(f)(1) indicated that an individual's private right of action is to be strictly confined to a period of 90 days, but that:

> ". . . the presence of strictures upon the individual's private right of action does not necessarily import a congressional intention to impose strict time limitations of a comparable nature on the Commission. The 180-day period serves its apparent purpose when it limits the time before which a private action may not be filed and thus avoids potential interference with the Commission in the performance of its primary duties of conciliation and enforcement. One would suppose that if the Congress had intended to cut off the Commission's right of action, it would have included clear language to that effect, just as it did when it clearly expressed its intention to cut off the individual's private right of action." At 156.

The Court went on to support its literal statutory interpretation with references to the 1972 Act's legislative history. Here it must be recognized that much of the Congressional debate was focused on a version of the bill, which would have given the EEOC the power to conduct hearings and issue cease and desist orders, on the model of the National Labor Relations Board and other federal regulatory agencies.[7] The fact that the authority to bring suit was substituted for this cease and desist power during the latter stages of enactment, not only accounts for some of the imprecision in the statutory language, but

also cautions against unrestricted use of the floor debates and committee reports as aids in interpreting the 180 day provision.

■ It is clear that Congress was aware of eighteen to twenty-four months' backlog in the Commission's processing of cases at the time the amendment was adopted. It is also apparent, that while voluntary resolution of disputes was still to be the primary administrative goal, a suit by the Commission was to be preferred to a private suit.[8] Thus it is unlikely, that Congress intended to force the Commission to resort to litigation within an unreasonably short period of time, in view of the already experienced administrative realities.

> "The congressional purpose that the possibilities of voluntary compliance by agreement be first thoroughly explored and the congressional purpose that judicial enforcement proceedings be primarily the province and responsibility of the Commission may be harmonized but not if a 180-day period from the filing of the charge is imposed for the filing of judicial proceedings." EEOC v. Cleveland Mills Co., *supra* at 157.

The legislative history cited by the defendant is not very helpful. The latter points to a portion of a Committee Report on H.R. 1746, which stated that in order to avoid "duplication of proceedings" the bill provided for "termination of Commission jurisdiction once a private action has been filed." However, when this is considered within its full context, it is clear that the statement refers to the original bill, which would have given the Commission the cease and desist powers which never became a reality.[9] In the absence of clear statuto-

---

7. *See,* the discussion in EEOC v. Union Oil Co. of Cal., 369 F.Supp. 579, 584 (N.D.Ala. 1974); *also see* the "Section by Section Analysis" of H.R. 1746 in House Report No. 92–238. 1972 U.S.Code Cong. & Admin. News, pp. 2137, 2162.

8. *See* the discussion in EEOC v. Cleveland Mills Co., at 156; *also see* 1972 Code Cong. & Admin.News at 2139–2143.

9. "The committee was concerned about the interrelationship between the newly created

ry language, there is no valid reason why this concern over duplication between administrative and judicial proceedings should be carried over to the situation, where the Commission has been given only the power to bring suit itself.

Although the district courts which have considered the 180 day question are not in total agreement, the weight of authority is decidedly on the side of the Commission's position. *See*, EEOC v. Eagle Iron Works, 367 F.Supp. 817 (S. D.Iowa 1973); EEOC v. Bartenders' Int'l Union, Local 41, 369 F.Supp. 827 (N.D.Cal.1973); EEOC v. Duff Brothers, Inc., 364 F.Supp. 405 (E.D.Tenn. 1973); EEOC v. Mobil Oil Corp., 362 F.Supp. 786 (W.D.Mo.1973); *contra,* EEOC v. Union Oil Co. of Cal., 369 F. Supp. 579 (N.D.Ala.1974); EEOC v. Louisville & N. R. R., 368 F.Supp. 633 (N.D.Ala.1974). Particularly enlightening is the opinon in the *Union Oil Co.* case, *supra,* in which the Court, after a careful discussion of the arguments on each side of the question, found them to be evenly balanced in persuasive effect and only ruled against the Commission in order that it might maintain consistency on the question within its own district.

This Court has elected to follow the weight of prior court precedents on this issue and in particular, the recent Fourth Circuit decision in EEOC v. Cleveland Mills, *supra.* The Court is reluctant to encourage the type of delay that has occurred in the Commission's processing of this case, and does not wish to preclude consideration of any prejudicial effects caused by such delay to the defendant's case, when it reaches a hearing on the merits. The defendant's motion for summary judgment is denied. So ordered.

cease and desist enforcement powers of the Commission and the existing right of private action. It concluded that duplication of proceedings should be avoided. The bill, therefore, contains a provision for termination of Commission jurisdiction once a private action has been filed (except for the power of the Commission to intervene in the private actions)." House Report No. 92–238, *supra* at 2148.