**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

v.

**NICHOLSON FILE COMPANY and Textile Workers Union of America, Local 477.**

**Civ. No. H-75-219.**

United States District Court, D. Connecticut.

Jan. 19, 1976.

230

David Ingram, Delores Wilson, Johnny J. Butler, Raymond D. Goodman, Equal Employment Opportunity Comm., Philadelphia, Pa., for plaintiff.

Brian Clemow, Brenda A. Eckert, Hartford, Conn., William S. Zeman, West Hartford, Conn., for defendants.

## RULING ON MOTION TO DISMISS

BLUMENFELD, District Judge.

The defendant Nicholson File Co. (Nicholson) has filed this motion to dis-

miss for want of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed.R. Civ.P. Because I deem the issues raised to be in the nature of an affirmative defense rather than jurisdictional, I shall treat the motion as one for summary judgment pursuant to Rules 12(c) and 56(b), Fed.R.Civ.P.[1]

## I. *History*

The central issue raised by this motion concerns the application of several of the time limits contained in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, to the somewhat extended history of this complaint of sex-based discrimination in employment. In order to understand the defendant's position, it is unfortunately necessary to trace in some detail how one employee's complaint served as the seed, which after a five and one-half year gestation period in various governmental agencies, finally burst forth as a full-blown enforcement action by the Equal Employment Opportunity Commission (EEOC).

On December 8, 1969, Lucille Harriott, an employee of the defendant, filed a complaint with the Office of Federal Contract Compliance (OFCC) in Washington, D. C.[2] The essence of her complaint, and the basis of the present lawsuit, was a charge that Nicholson did not pay its women employees wages equal to those it paid to its male employees performing substantially equal work.

On April 20, 1970, Ms. Harriott quit her job at Nicholson. The affidavit of Nicholson's Manufacturing Manager states that she quit for reasons unrelated to this action or to her allegation. The EEOC has not submitted any contrary material.

On June 7, 1971, seven months after it received the complaint, the OFCC referred it to both the Wage & Hour & Public Contracts Division of the Department of Labor, and to the EEOC. The Washington office of the EEOC in turn referred the complaint to its New York field office, where it was received on June 24, 1971. The New York field office referred the complaint to the Connecticut Commission on Human Rights and Opportunities on July 6, 1971, pursuant to 42 U.S.C. § 2000e–5(c).[3] After the required 60 days had passed, the EEOC notified Ms. Harriott that, if she desired, the Commission could assert jurisdiction over her charge. On September 22, 1971, 22 months after she wrote her original letter, and 17 months after she resigned, Ms. Harriott's charge was officially filed with the EEOC.[4]

On March 24, 1972, the 1972 amendments to the Civil Rights Act of 1964 became effective.[5] On April 1, 1972, notice of the pending charge was given to Nicholson.[6]

---

1. Technically, this would be necessary in any event, since Nicholson has submitted the affidavit of its Manufacturing Manager, Vincent J. Hamilton, for consideration in support of its motion.

2. The Office of Federal Contract Compliance is a federal government agency which protects the employment rights of persons employed or seeking employment with federal government contractors or with contractors performing under federally assisted construction contracts pursuant to Executive Order 11,246. Under this Order, a federal contractor is required to include in each contract a seven-point equal opportunity clause, in which the employer agrees not to discriminate against anyone in the hiring process or during employment on the basis of race, color, creed, or national origin. In addition, the contractor also agrees to take "affirmative action" to ensure that applicants are employed, and that employees are treated during their employment, without regard to their race, color, creed, or national origin. Brief of the Plaintiff in Opposition to Motion to Dismiss, 2 n. 1.

3. At that time the relevant section was 42 U.S.C. § 2000e–5(b). The 1972 amendments, Pub.L. No. 92–261 (Mar. 24, 1972), added a new subsection (a) and relettered the old subsections. In order to avoid confusion the present citations will be used in the text and the pre-amendment citations will be given in footnotes, where necessary.

4. 29 C.F.R. § 1601.12(b)(iv).

5. Pub.L. No. 92–261 § 14, 86 Stat. 103, 113 (Mar. 24, 1972).

6. There was a six month, one week delay between the date when the EEOC accepted jurisdiction and the date when notice was given to the defendant. The EEOC attributes this delay

On February 15, 1973, Ms. Harriott amended her complaint to include a charge against the defendant union, and the entire administrative process began anew, with another referral to the Connecticut Commission and a return from them on March 2, 1973.

After an investigation, the EEOC issued its Letter of Determination on December 20, 1973. Negotiations aimed at conciliation failed, and this action was filed on June 30, 1975.

In this motion Nicholson raises three claims. First, it claims that Ms. Harriott's charge was not filed with the EEOC within 210 days following the act of discrimination. This was the period allowed by 42 U.S.C. § 2000e–5 at the time of the occurrence.[7] Second, Nicholson claims that, even if the charge was timely filed, this action must be dismissed because the EEOC failed to give it notice within a reasonable time. Finally, it claims that the EEOC's right to sue expired before this action was commenced.

## II. *Was the Original Charge Timely Filed?*

Nicholson argues that because the acts complained of occurred before Ms. Harriott wrote her letter on December 8, 1969, her failure to file the complaint

to the backlog created when a new field office was opened in Boston, Mass., on July 7, 1971, and many charges, including this one, were transferred there from the New York City office.

7. This time period was expanded to 300 days by the 1972 amendments. 42 U.S.C. § 2000e–5(e).

8. 42 U.S.C. § 2000e–5(e) states:

"A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal pro-

with the EEOC before September 22, 1971 deprives this court of subject matter jurisdiction.

The first question is whether the time limits set out in 42 U.S.C. § 2000e–5(e)[8] are jurisdictional, or in the nature of a statute of limitations.[9] This is an important distinction, since the statute of limitations is merely an affirmative defense, subject to waiver and other equitable limitations, whereas a jurisdictional defect cannot be cured even by consent of the parties.

The defendant contends that these requirements are jurisdictional, relying on *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970) and *McFadden v. Baltimore Steamship Trade Ass'n*, 352 F.Supp. 403 (D.Md.), *aff'd*, 483 F.2d 452 (4th Cir. 1973). If this is the case the complaint must be dismissed, since the charge was filed well over 210 days after the events occurred.

However, this court does not accept the defendant's characterization of the time limitations. This point has recently been discussed at length by the Court of Appeals for the Fifth Circuit in *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (1975). The court first noted that:

"This ninety day requirement applied only to charges filed with the

ceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency."

Prior to the 1972 amendments, the time limits were 90 and 210 days respectively, and there was no notice requirement. 42 U.S.C. § 2000e–5(d) (1964).

9. Several early cases held that the time limits were not even mandatory, but were merely enacted as directions to potential applicants. *See, e. g., Cunningham v. Litton Indus.*, 413 F.2d 887 (9th Cir. 1969); *Miller v. International Paper Co.*, 408 F.2d 283 (5th Cir. 1969); *International Bhd. of Elec. Workers v. United States EEOC*, 398 F.2d 248 (3d Cir. 1968).

EEOC. In terms, at least, it had nothing to do with the jurisdiction of the United States district courts over a suit later authorized by the EEOC." 516 F.2d, at 926. The court then admitted that several decisions, including some in its own circuit, had used the expressions "jurisdictional" and "statute of limitations" loosely, and often interchangeably. The court continued:

"Conceptual confusion springs from a court's describing the ninety day requirement as 'jurisdictional' but proceeding on the basis of an analogy to how statutes of limitations have been construed. Statutes of limitations, designed as they are primarily to prevent stale claims, are traditionally thought to be subject to much more flexible construction than statutes which confer subject matter jurisdiction upon courts."

516 F.2d, at 927.

Finally, after a discussion of several of its own earlier decisions, the court concluded:

"We accept the view that the requirement should be analogized to statutes of limitations. Equitable modifications, such as tolling and estoppel, that are applied to them should also be applied here."

516 F.2d, at 928.

Nicholson has attempted to present only two alternatives. It claims that this court must find either that the charge was filed with the EEOC more than 210 day after the alleged acts of discrimination and therefore this court is without jurisdiction; or that the filing of the charge with the OFCC should be *deemed* a filing with the EEOC, and that the period that Nicholson was without notice should be measured from the date when the OFCC received the complaint, December 11, 1969.

█ If the time limitations are viewed as the equivalent of a statute of limitations, however, there is a third alternative. This third position raises the question of whether the filing of the complaint with the OFCC tolled the 210-day period allowed under Title VII. While this appears to be a question of first impression, the weight of authority on similar issues appears to support an affirmative answer.

The Supreme Court has historically taken a flexible position regarding federal statutes of limitations. In *Burnett v. New York Central Railroad Co.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965), the Court stated:

"Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes 'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded . . . .'

"This policy of repose, designed to protect defendants, is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights."

*See also American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).[10]

This liberal policy toward the statute of limitations has been applied to Title

---

10. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), is not *contra*. In that case the Court held that the plaintiff's election to pursue his Title VII remedy did not toll the state statute of limitations applicable to his suit under 42 U.S.C. § 1983. The Court expressly distinguished *Burnett* and *American Pipe* on the grounds that they involved a *federal* statute of limitations and that they evidenced a "significant underlying federal policy that would have conflicted with a decision not to suspend the running of the statute." 421 U.S., at 466, 95 S.Ct., at 1723. In addition the Court noted that the two earlier cases involved the pursuit of only one cause of action as opposed to *Johnson*, which involved an election of remedies.

The facts of the present case clearly reflect the policies of *Burnett* and *American Pipe*. *See also Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). *But cf. Guv v. Robbins & Myers, Inc.*, 525 F.2d 124 (6th Cir. 1975).

VII cases in the line of decisions which have held that the plaintiff's election to exhaust his contractual grievance procedures served to toll the time limit on his complaint to the EEOC. *Malone v. North American Rockwell Corp.*, 457 F.2d 779 (9th Cir. 1972); *Hutchings v. United States Industries, Inc.*, 428 F.2d 303 (5th Cir. 1970); *Culpepper v. Reynolds Metals Co.*, 421, F.2d 888 (5th Cir. 1970). *Contra, Guy v. Robbins & Myers, Inc.*, 525 F.2d 124 (6th Cir. 1975).

As the court pointed out in *Culpepper*, 421 F.2d, at 892:

> "Congress, in placing the various time limitations in Title VII, was attempting to eliminate the problem of 'second thought complaints,' stale complaints and the hampering effect that they can have on our labor market. However, the time limitation is meant to penalize only those who sleep on their rights and remedies, not one who actively attempts to settle his complaint by following the 'rules of the shop.'"

In many ways the facts of this case present an even more persuasive argument for tolling than was present in *Culpepper*.

Executive Order 11,246,[11] provides for equal employment opportunity in all businesses which contract with the federal government. It represents an attempt by the executive branch to enforce the same policies which are reflected in Title VII. In many ways it duplicates the coverage of Title VII. No company is exempt from Title VII because it is covered by the Order and vice versa. It does not represent a separate remedy as much as an alternate route by which an employee can bring the enforcement power of the federal government to bear on an employer's discriminatory practices.

The OFCC, which enforces the Executive Order, acts in fact as a screening agency, and channels the complaint to the federal agency which is best equipped to investigate it. One possibility, which is demonstrated in this case, is that the OFCC can:

> "(3) Recommend to the Equal Employment Opportunity Commission or the Department of Justice that appropriate proceedings be instituted under Title VII of the Civil Rights Act of 1964."

3 C.F.R. 174. It would frustrate both the policy of the Executive Order and of Title VII to allow the extremely short time periods contained in the Act to run while the OFCC completed the preliminary investigation which would allow it to refer the complaint to the appropriate agency. This is especially true since:

> "The Act contemplates that complaints initiating EEOC proceedings will be brought in the first instance by laymen. It is reasonable, therefore, for courts to refuse to apply technical rules of common law pleading to charges filed initially with the Commission."

*Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 928 (5th Cir. 1975).

The plaintiff here did not sleep on her rights. Ms. Harriott brought her complaint to one of the several government agencies which have jurisdiction over complaints of discrimination. That agency completed its initial investigation and referred the complaint to the EEOC. There is nothing in this series of events which suggests an election of remedies or which argues for a strict application of the statute of limitations, frustrating both Ms. Harriott and the policies underlying Title VII and Executive Order 11,-246.[12]

---

11. 3 C.F.R. 169.

12. Nicholson argues that while various policies might favor leniency in the case of a suit by a private plaintiff, the matter should appear in a different light when the EEOC is the plaintiff. It cites *EEOC v. Westvaco Corp.*, 372 F.Supp. 985 (D.Md.1974), for the proposition that the EEOC must be held strictly accountable for violations of its own procedures. This argument does not apply to the facts of this case, however, for a strict interpretation of the limitations period would apply to private plaintiffs as well as to the EEOC. Furthermore, this is not a case of the EEOC failing to comply with its own regulations, since the decision concerning where to file the original complaint is solely that of the charging party.

I conclude, therefore, that the 210-day time limitation was tolled when Ms. Harriott filed her complaint with the OFCC. When the complaint was referred to the EEOC and officially filed on September 22, 1971, it was timely.[13]

### III. *Did the EEOC Fail to Give Notice Within a Reasonable Time?*

█ In its second attack on the complaint, Nicholson argues that, even if the original charge was filed within the applicable time limit, the failure of the EEOC to give notice to the company within a reasonable time requires that this action be dismissed.

Nicholson attempts to reach this result through two different approaches. Its first argument relies on the content and purpose of the 1972 amendments to Title VII. One of the major effects of those amendments was to give the EEOC the power to bring suit in its own right. 42 U.S.C. § 2000e–5(f)(1). This power has been held to be retroactive allowing the EEOC to sue to enforce complaints which were pending at the time the amendments became effective. *EEOC v. Kimberly-Clark Corp.*, 511 F.2d 1352 (6th Cir.), *cert. denied*, —— U.S. ——, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975); *EEOC v. United Aircraft Corp.*, 383 F.Supp. 1313 (D.Conn.1974).

Nicholson does not contest this retroactivity, but argues instead that another of the 1972 amendments, the ten-day notice requirement in § 2000e–5(e), should also be held to be retroactive so as to bar this suit. In support of this position the company relies on Pub.L. No. 92–261 § 14, 86 Stat. 103, 113 (Mar. 24, 1972), which states:

"The amendments made by this Act to section 706 of the Civil Rights Act of 1964 shall be applicable with respect to charges pending with the Commission on the date of enactment of this Act and all charges filed thereafter."

The thrust of Nicholson's position is, therefore, that although Congress expressly made the EEOC's power to sue retroactive, it intended this power to apply only to charges which had been pending less than ten days, or on which the EEOC had fortuitously sent out notice within ten days of receipt, even though there was no legal requirement that they do so at the time. Stating the result is enough to defeat the argument.

In this case, the EEOC notified Nicholson within ten days of the effective date of the amendments. That action was sufficient to satisfy the notice requirement of the amended Act.

Nicholson argues further, however, that even if there was no statutory notification period, the Act should be construed as having required the EEOC to have given notice within a "reasonable" time. The company contends that the 27-month period between the filing of the charge with the OFCC and the sending of notice by the EEOC constituted an unreasonable delay, requiring that this suit be dismissed.

Nicholson relies on two Fifth Circuit cases to support its imputation of a "reasonable time" requirement; *Chromcraft Corp. v. EEOC*, 465 F.2d 745 (5th Cir. 1972), and *Georgia Power Co. v. EEOC*, 412 F.2d 462, 467 n. 10 (5th Cir. 1969). In the former case the court reached its result by interpreting Title VII in conjunction with Section 706 of the Administrative Procedure Act, 5 U.S.C. § 706.

---

**13.** It is not necessary, therefore, for me to reach the question of whether Ms. Harriott charged acts of a "continuing" nature, so that the time period never began to run. *See Cox v. United States Gypsum Co.*, 409 F.2d 289 (7th Cir. 1969). A finding of a continuing violation would raise the more difficult question of the effect of the charging party's resignation on the power of the EEOC to prosecute its own action. *Compare EEOC v. Huttig Sash & Door Co.*, 511 F.2d 453 (5th Cir. 1975) *with American Fin. Sys., Inc. v. Harlow*, 65 F.R.D. 94, 103 (D.Md.1974).

*See also EEOC v. United Aircraft Corp.,* 383 F.Supp. 1313 (D.Conn.1974). Under this interpretation, a defendant would prevail if he could show both an unreasonable delay and that the delay had resulted in prejudice to him.

■ As I pointed out earlier, however, Nicholson has misconstrued the procedural posture of this case. Since Nicholson takes the position that the only way that this court could find the original charge timely would be to hold that the filing with the OFCC should be deemed a filing with the EEOC, it computes the delay in notification from that date. I have held, however, that the effect of the filing with the OFCC was to toll the limitations period; the date when the charge was officially filed with the EEOC was September 22, 1971, the date it was returned from the Connecticut Commission. When the time is figured from that date, there was only a period of six months and one week between the filing and notification. Under all the circumstances, this period was clearly not unreasonable.

It should be noted that this holding is influenced by the manner in which the defense has been presented. I simply hold that the delay demonstrated by the defendants is insufficient to deprive this court of subject matter jurisdiction for purposes of a motion to dismiss pursuant to Rule 12(b)(1), and is insufficient to support a finding of unreasonable delay and prejudice as a matter of law for purposes of a summary judgment pursuant to Rule 56(b). *National Life Insurance Co. v. Solomon,* No. 75–7294 (2d Cir. 1975); *Heyman v. Commerce & Industry Insurance Co.,* 524 F.2d 1317 (2d Cir. 1975). An equitable defense, in the nature of laches, is still open to the defendants when this case proceeds to trial. *Cf. EEOC v. C&D Sportswear Corp.,* 398 F.Supp. 300, 302–03 (M.D.Ga.1975); *EEOC v. United Aircraft Corp.,* 383 F.Supp. 1313 (D.Conn.1974).

### IV. *Did the EEOC's Right to Sue Expire Before This Action Was Commenced?*

■ Finally, Nicholson attempts to resurrect the argument that the right of the EEOC to file suit expires at the end of the 180-day period of exclusive EEOC jurisdiction established by 42 U.S.C. § 2000e–5(f)(1). This argument has been unanimously rejected by the five circuit courts which have dealt with it,[14] and by at least ten district courts,[15] including one in this district. While, as the defendant points out, "persuasiveness of judicial reasoning rather than force of numbers should prevail," this court is convinced that the 180-day period was intended to give the EEOC freedom of action and to prohibit individual suits during that time and not to limit the power of the EEOC to bring suit at a later date. There is no support for an argument which attempts to reverse a clause which expands the importance and power of the EEOC and construe it

---

**14.** *EEOC v. Meyers Bros. Drug Co.,* 521 F.2d 1364 (8th Cir. 1975); *EEOC v. E. I. duPont de Nemours & Co.,* 516 F.2d 1297 (3d Cir. 1975); *EEOC v. Kimberly-Clark Corp.,* 511 F.2d 1352 (6th Cir.), *cert. denied,* —— U.S. ——, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975); *EEOC v. Louisville & Nashville R.R. Co.,* 505 F.2d 610 (5th Cir. 1974); *EEOC v. Cleveland Mills Co.,* 502 F.2d 153 (4th Cir. 1974), *cert. denied,* 420 U.S. 946, 95 S.Ct. 1328, 43 L.Ed.2d 425 (1975).

**15.** *EEOC v. United Aircraft Corp.,* 383 F.Supp. 1313 (D.Conn.1974); *EEOC v. Western Elec. Co.,* 382 F.Supp. 787 (D.Md.1974); *EEOC v. Christianburg Garment Co.,* 376 F.Supp. 1067 (W.D.Va.1974); *EEOC v. E. I. duPont de Nemours & Co.,* 373 F.Supp. 1321 (D.Del. 1974), *aff'd,* 516 F.2d 1297 (3d Cir. 1975); *EEOC v. Huttig Sash & Door Co.,* 371 F.Supp. 848 (S.D.Ala.1974), *rev'd on other grounds,* 511 F.2d 453 (5th Cir. 1975); *EEOC v. Eagle Iron Works,* 367 F.Supp. 817 (S.D. Iowa 1973); *EEOC v. Duff Bros., Inc.,* 364 F.Supp. 405 (E.D.Tenn.1973); *EEOC v. Hickey-Mitchell Co.,* 372 F.Supp. 1117 (E.D.Mo.1973), *aff'd,* 507 F.2d 944 (8th Cir. 1974); *EEOC v. Mobil Oil Corp.,* 362 F.Supp. 786 (W.D.Mo. 1973); *EEOC v. Bartenders Int'l Union,* 369 F.Supp. 827 (N.D.Cal.1973).

as a limitation on that power. This is especially true in the case of a statute which serves so important a remedial purpose.

■ For the same reason, the defendant's final arguments, that this court should construe the Act so as to engraft additional judicial limitations on the EEOC's power to bring suit, must similarly fail. There is no support in the statute for the position that the EEOC's right to sue expires either when it issues a "Right-to-Sue" letter to the charging party,[16] or when the 90-day statute of limitations runs against the individual.[17]

The interests of the EEOC are not the same as those of the charging party, and it cannot be assumed in the absence of an express statement that Congress intended similar limitations. *But see EEOC v. C&D Sportswear Corp.*, 398 F.Supp. 300 (M.D.Ga.1975). As the Court of Appeals for the Sixth Circuit stated in rejecting the argument that the EEOC is subject to state statutes of limitations:

"We agree with the District Court that a state statute of limitations does not run against the EEOC in this case. The EEOC alleges company practices that violate Title VII. If its complaint is well-founded, it will be entitled to relief that will protect the interests of past, present, and future employees of Appellee, so that Appellant represents the interests of individuals who are not among the charging parties. Furthermore, the eradication of discrimination by race and sex promotes public interests and transcends private interests. Each step along the road to equal employment opportunity takes us closer to the goal of a truly open society, confining individuals only within boundaries set by their own talents and determination. . . . 'Title VII of the Civil Rights Act of 1964 should not be construed narrowly, and the Commission may, in the public interest, provide relief which goes beyond the limited interests of the charging parties.' . . . In the absence of congressional intent to apply state statutes of limitations, such restrictions do not apply to the EEOC."

*EEOC v. Kimberly-Clark Corp.*, 511 F.2d 1352, 1359–60 (6th Cir.), *cert. denied,* — U.S. ——, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975).

■ I hold that Title VII places no limitations on the time in which the EEOC can institute an action. However, this does not leave a defendant subject to an unfair risk since proof of an unreasonable delay, and prejudice to his defense which has been caused by that de-

**16.** The EEOC argues that it never issued a "Right-to-Sue" letter in this case, but rather a letter notifying Ms. Harriott of her right to obtain a "Right-to-Sue" letter. This factual issue, which would prevent this court from rendering a summary judgment in any event, is unimportant because, in my interpretation of the statute, the issuance of a "Right-to-Sue" letter to the charging party has no effect on the EEOC's own right to sue. *But see EEOC v. C&D Sportswear Corp.*, 398 F.Supp. 300 (M.D.Ga.1975).

**17.** 42 U.S.C. § 2000e–5(f)(1) states in relevant part:
"If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice."

lay, entitle him to raise the equitable defense of laches.[18]

The motion of the defendant, Nicholson File Co., is denied.

So ordered.

---

18. The defendant submitted the affidavit mentioned in note 1, *supra*, in an attempt to prove that it has already suffered serious prejudice. In that affidavit, Mr. Hamilton states that, to his knowledge, the notice from the EEOC was the first notice of the pending charge which the defendant received. This implies that no notice was received from either the OFCC or the Connecticut Commission on Human Rights and Opportunities. The affidavit further states that, because it had no notice, the defendant has not kept all the records pertinent to this case. I hold, however, that the failure of the affidavit to state that Mr. Hamilton would definitely have known of any earlier investigation had there been one, and the nature of the complaint charging failure of the defendant to pay equal wages for equal work, a charge which depends not on personal testimony but on the type of records which are most likely to have been retained by the defendant, make the affidavit, standing alone, insufficient to support summary judgment on the issue of laches. *Jaroslawicz v. Seedman*, 528 F.2d 727 (2d Cir. 1975); *National Life Ins. Co. v. Solomon*, No. 75–7294 (2d Cir. 1975); *Judge v. City of Buffalo*, 524 F.2d 1321 (2d Cir. 1975); *Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317 (2d Cir. 1975).